Commonwealth ex rel. Grillo, Appellant, v. Shuster.

230

Argued June 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Alfred L. Steff, Jr.,* with him *Gretchen Sohn Reed,* and *Wallover, Reed & Steff,* for appellant.

*Charles F. Bowers, Jr.,* for appellee.

OPINION BY SPAETH, J., November 16, 1973:

This is an appeal from the denial of a petition for a writ of habeas corpus. Appellant seeks by the petition to gain custody of her three daughters, who are 6, 9,

and 11 years old. Appellant is the natural mother, appellee John F. Shuster, Jr., the natural father. They were divorced on June 1, 1970; by agreement, custody of the children was granted to appellee, and the children have lived with him for the past three years. On June 28, 1971, appellant remarried; in September, 1971, appellee did. Appellant filed her petition for habeas corpus in October, 1972. It was denied by order of November 30, 1972. In assigning error, appellant contends that the court below did not properly apply two interrelated principles: (1) that the ultimate question in a custody case is what will serve the best interests of the children; and (2) that it should be presumed that the best interests of children of "tender years" will be served by granting custody to their natural mother.

Child custody cases are among the most subtle and complex of all cases, and the attempt to resolve the bitter disputes they engender has been a constant challenge to the courts. In one of the first recorded decisions in western history the judge devised an extreme but effective procedure to determine which of two contending women should have custody of a child.[1] If our procedures are to be effective, we must constantly re-

---

[1] *See* 1 *Kings* 3:23-27 (King James):

"23 Then said the king, The one saith, This *is* my son that liveth, and thy son *is* the dead: and the other saith, Nay; but thy son *is* the dead, and my son *is* the living.

"24 And the king said, Bring me a sword. And they brought a sword before the king.

"25 And the king said, Divide the living child in two, and give half to the one, and half to the other.

"26 Then spake the woman whose the living child *was* unto the king, for her bowels yearned upon her son, and she said, O my lord, give her the living child, and in no wise slay it. But the other said, Let it be neither mine nor thine, *but* divide *it.*

"27 Then the king answered and said, Give her the living child, and in no wise slay it: she *is* the mother thereof."

appraise them. It will not do to rely upon unexamined legal presumptions or simple syllogisms.

There is no doubt that as a matter of law, not to mention common sense, the ultimate question in a child custody case is what will serve the best interests of the child: "It is well-settled that the best interest of the child is paramount in contests between parents for custody of minor children. Cochran Appeal, 394 Pa. 162, 145 A. 2d 857 (1958); Com. ex rel. Graham v. Graham, 367 Pa. 553, 80 A. 2d 829 (1951)." *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 107-108, 296 A. 2d 625, 627 (1972).[2] The difficulty arises when one examines the manner in which the courts have tried to implement this principle.

Rather than struggle with the intricacies of the particular situation confronting a particular child, courts too often speak in terms of the presumption, here urged upon us by appellant, that if the child is of "tender years", the best interests of the child will be served by granting custody to the mother. Indeed so often has this been said that the presumption has by repetition gathered such strength as to put the burden on the father to show "compelling reasons" why the mother should not have custody. *Commonwealth ex rel. Logue v. Logue,* 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960) (collecting cases). Consequently, the trial of a child custody case is likely to become an exploration of the mother's past conduct in an effort by the father to show

---

[2] Such a statement simply echoes the requirement of the Act of June 26, 1895, P. L. 316, §2, 48 P.S. §92, which provides: "In all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child."

that she is unfit to care for the child. Past conduct may be forgiven, for "[c]ustody must be determined on the basis of facts as they exist at the time of the habeas corpus hearing [citations omitted]." *Commonwealth ex rel. Shipp v. Shipp*, 209 Pa. Superior Ct. 58, 60, 223 A. 2d 906, 907 (1966). "This principle has application even where there has been a serious lapse from moral standards by the mother, provided her past misconduct will not adversely affect the best interests of the child. The classic authority to this effect is Commonwealth v. Addicks and Wife, 5 Binney 520 [1813]". *Commonwealth ex rel. Kevitch v. McCue*, 165 Pa. Superior Ct. 49, 52, 67 A. 2d 582, 583 (1949) (reversing an order granting custody to the father, for although the mother had once been a prostitute and drug addict, she had been reformed for six years and was no longer unfit to raise the child). Even so, the proceeding is in danger of becoming an inquiry to determine whether the mother has forfeited her "prima facie right" to custody, *Commonwealth ex rel. Logue v. Logue, supra* at 215, 166 A. 2d at 64, rather than being a dispassionate and comprehensive analysis of all alternatives, to find what solution is indeed in the best interests of the child.[3]

---

[3] Section 2 of the Act of June 26, 1895, *supra*, 48 P.S. §92, quoted in footnote 2, *supra*, mentions only the "best interest and permanent welfare" of the child as the standard to be applied. The first statutory reference to the right of a mother to exercise dominion over a child seems to subordinate her right to the father's: "[W]hensoever any husband or father, from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his child or children, the mother of such children shall have all the rights and be entitled to claim, and be subject to all the duties reciprocally due between a father and his children, and she may place them at employment and receive their earnings, or bind them to apprenticeship without the interference of such husband, the same as the father can now do by law: *Provided always*, That she shall afford to them a good example, and properly educate and maintain them

If it is difficult for the hearing judge to thread a way between the charges and countercharges of the child's parents, it is still more difficult for this court to do so. With only the printed record before us we cannot second-guess the hearing judge's findings. We do, however, have the power to require such procedures as will ensure that the record, including the opinion filed by the hearing judge in support of the custody order, is complete. "Notwithstanding recent changes in the habeas corpus statutes pertaining to appeals in child

according to her ability: *And provided,* That if the mother be of unsuitable character to be entrusted as aforesaid, or dead, the proper court may appoint a guardian of such children, who shall perform the duties aforesaid, and apply the earnings of such children for their maintenance and education." Act of May 4, 1855, P. L. 430, §3.

Section 1 of the Act of June 26, 1895, *supra,* as amended May 13, 1925, P. L. 638, 48 P.S. §91, suspended by Pa. R. C. P. 2250(5) as concerns an action on the child's behalf, makes the mother's rights to "control and authority" over the child equal, not superior, to the father's: "Hereafter a married woman, who is the mother of a minor child (and who contributes by the fruits of her own labor or otherwise toward the support, maintenance and education of her said minor child), shall have the same and equal power, control and authority over her said child and shall have the same and equal right to its custody and services and earnings as is now by law possessed by her husband, who is the father of such minor child: Provided, however, That the mother of such minor child is otherwise qualified as a fit and proper person to have the control and custody of said child. If either the father or the mother desert their child or fail to perform their parental duties the right to the custody, services, and earnings of the child shall belong to the other: Provided, however, That such remaining parent is otherwise qualified as a fit and proper person to have the control and custody of said child. The father and mother shall have a joint right of action for injuries to their minor child, for the loss of its services and expenses incidental thereto, and either the father or mother shall have the right to sue therefor in the name of both. In case the father and mother live apart the action shall be maintained by the parent having the custody of the child and the control of its services."

custody proceedings, the scope of review of [the Supreme Court] and of the Superior Court remains that of the broadest type [footnote omitted]." *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 443, 292 A. 2d 380, 383 (1972). Thus a case will be remanded where an important issue or piece of evidence is not included in the record. "Under both the statutory and case law, the scope of our review in child custody cases is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it. Commonwealth ex rel. Gifford v. Miller, 213 Pa. Superior Ct. 269, 273-274, 248 A. 2d 63 [, 66] (1968) and cases cited therein. The decision of the court below here has nothing on the record which supports it due to the incorrect procedure followed in hearing the testimony of the children. If their testimony is to be taken out of the presence of the contending parties, counsel should be present and have an opportunity to examine them, Snellgrose Adoption Case, 432 Pa. 158, 166 n.3, 247 A. 2d 596 [, 600, n.3] (1968), and their testimony should be on the record [footnote omitted]." *Commonwealth ex rel. Morales v. Morales*, 222 Pa. Superior Ct. 373, 375-376, 294 A. 2d 782, 783 (1972). "[W]henever a judge does hereafter [grant custody to one other than the natural mother], he should do so only after a full and complete explanation of the reasons underlying his decision, which reasons should be set forth in a complete, comprehensive opinion." *Commonwealth ex rel. Fox v. Fox*, 216 Pa. Superior Ct. 11, 17, 260 A. 2d 470, 472-473 (1969).

These considerations require a restatement of the role of the "tender years" presumption and of the procedures to be followed by the hearing judge.

The "tender years" presumption does not reflect or derive from the mother's "right", whether that right be characterized as "prima facie" or otherwise. It is pro-

cedural only. One party or the other must have the burden of proof. If, after a full development of the record, the hearing judge finds that the interests of the child would be equally served by granting custody to either litigant, custody should be awarded to the child's natural mother. This is in line with the most recent statement by the Pennsylvania Supreme Court: "[T]he 'tender years' [presumption] is merely the vehicle through which a decision respecting the infant's custodial well-being may be reached where factual considerations do not otherwise dictate a different result". *Commonwealth ex rel. Parikh v. Parikh, supra* at 109, 296 A. 2d at 627.[4] Such cases will be rare. Typically one party will demonstrate by the weight of the evidence that he or she can provide the better home. *Cf. Commonwealth ex rel. McLeod v. Seiple,* 193 Pa. Superior Ct. 131, 136, 163 A. 2d 912, 914 (1960): "While it has been generally held that, other factors being equal, a child of tender years should be with the mother, this rule is by no means absolute. Each case must finally rest upon and be determined by its own facts."

So that there may be assurance that the presumption has been thus confined, and that the fact-finding process and ultimate adjudication did focus on what will serve the best interests of the child, as the issue to which "all other considerations are subordinate," *Com-*

---

[4] In *Parikh* the father was awarded custody, when the mother wished to return to India. The opinion for the court was by Jones, C. J., Manderino, J., concurring in the result. A dissenting opinion was filed by Eagen, J., Roberts and Pomeroy, JJ., joining. The dissent relies upon the "tender years" presumption, and refers to "the mother's right to custody". However, the dissent seems to turn at least as much on the dissenting Justices' view of the facts, Mr. Justice Eagen saying: ". . . it is quite evident to me the only basis for the majority decision is the reluctance to permit the child's departure from the United States and the resulting hardship on the father incident to seeing and visiting the child". 449 Pa. at 111, 296 A. 2d at 629.

*monwealth ex rel. Holschuh v. Holland-Moritz, supra* at 444, 292 A. 2d at 383, the hearing judge should file in every custody case a comprehensive opinion reflecting a thorough analysis of the record as a whole and specifying the reasons for the ultimate decision. This merely extends the rule enunciated in *Commonwealth ex rel. Fox v. Fox, supra,* requiring such an opinion when custody is granted to one other than the natural mother.

When these principles are applied to the present case, it becomes apparent that the record must be remanded for further proceedings. The transcript and the opinion when read together reveal that this is one of those cases in which the mother's virtue was the primary subject of the litigation. The transcript reflects important facts not mentioned in the hearing judge's opinion. It is therefore impossible to evaluate how much weight those facts were given, with the result that there cannot be an intelligent appellate disposition.

Perhaps the most important facts not mentioned in the hearing judge's opinion are what he was told by the three children.[5] At the close of the hearing the children were individually questioned by the judge in chambers. Counsel were offered the right to be present but both declined. The substance of these conferences does not appear either in the transcript or in the opinion, nor does the opinion indicate the weight the hearing judge gave to what the children told him. The fact that we therefore do not know what the children told

---

[5] When the hearing judge asked appellant, "Have the children made any expression to you about not being happy where they are now and preferring to live with you?", appellant replied, "They have all said right outside there that they want to still come to live with me and they said they do like their new house . . . they have always been afraid to talk to [appellee] because he yells and he hollers and this is one thing, they are still afraid to talk to [him] . . . ."

the judge by itself necessitates remand. In *Commonwealth ex rel. Morales v. Morales, supra,* two requirements were specified: that counsel be permitted to be present when the children were questioned, so that they could examine the children; and that the children's "testimony should be on the record". *Id.* at 376, 294 A. 2d at 783. Here, the first of these requirements was met; the second was not.

There is other evidence, which does appear in the record, that should upon remand be reconsidered and commented upon by the hearing judge.

The record reveals that appellee's present wife is 23 years old—only 12 years older than the oldest child in question—and also, that she was pregnant with her own first child at the time of the hearing. It is not suggested that these facts are determinative, but they are relevant and worthy of some mention. Although the hearing judge cites examples of appellant's past inability to withstand stress and extrapolates this into the future, there is no analogous discussion of how appellee's present wife might treat stepchildren relative to her own natural child.

No mention is made in the opinion of the fact that because appellee is an international airline pilot he is away from home about two weeks out of every month. One wonders whether this situation might not put appellee's present wife under the same sort of stress that appellant candidly admitted led to her use of marijuana.

Twice in the opinion the hearing judge makes oblique reference to appellee's wealth: "[Appellant] . . . needed release and outlet from her boring and dreary life in the $55,000 home provided by her overseas pilot husband." "The father . . . recently acquired a large farm in Beaver County, built a new home and is constructing a barn to house twenty show horses. His investment presently exceeds $100,000 . . ." The record, but not the opinion, shows that appellant's present hus-

band is an architect earning about $20,000 per year, as compared to appellee's income, which is "in excess of $30,000". Either income would appear adequate to support three children. Unless the income of one party is so inadequate as to preclude raising the children in a decent manner, the matter of relative incomes is irrelevant.

Finally, the evidence suggests that the two families—appellant and her second husband and appellee and his second wife—have different styles of life; at least, appellant and appellee do. Throughout the testimony, and in the briefs to this court, there are references to appellant's "hippie" attitudes and style as contrasted with appellee's "straight" ones, and it is plain that this difference was an important reason for the parties' divorce.[6] Although appellant testified that she has changed her ways, at least to some extent the difference in style seems to have persisted.[7]

It is difficult to know what weight the hearing judge gave such evidence. The judge does say in his opinion that appellant "readily and candidly admitted her past misconduct which involved continuous use of marijuana, illicit relations with several men and consorting with members of the drug subculture." He does not, however, appraise, or refer to, the evidence that appellant's present marriage is a happy one, in "a middle class average neighborhood", and that appellant is engaged in a number of wholesome hobbies. Instead the judge comments that even in a "perfect marriage" (as appellant said her present marriage is) "there will be considerable stress", going on to say, "We are concerned that one of the storms which are certain to oc-

---

[6] This was appellee's own judgment: "I think she just got tired of living a straight, everyday housewife-type life."

[7] Thus appellee testified regarding appellant's present husband that "he is a neat man, even if [he wears] what we might call flamboyant clothes, he is a neat man."

cur while these children are en route to adulthood, will produce another escape episode in the life of [appellant] leaving these children not only without the love and guidance of a mother but without any supportive assistance whatsoever". In view of the judge's failure to comment on the evidence of appellant's reform, we cannot evaluate this prediction. Nor is there any comparable prediction of appellee's probable future conduct. There was evidence that appellee had appellant arrested ("for her own good") when she was using drugs. Also, according to appellant's testimony, appellee told her that "he had a stewardess that was a mistress in New York . . . [and the] Stews all said he was great in bed, why couldn't I act like the Stews acted in bed." It may be that the judge agreed with appellee's judgment in having his wife arrested. Appellee denied the testimony regarding the stewardesses, and it may be that the hearing judge accepted his denial. However, the omission by the judge to mention evidence critical of appellee's past conduct, as compared to his emphasis on evidence regarding appellant's past conduct, leaves the reader uncertain what were the facts that persuaded the judge that it would be in the best interests of the children to award their custody to the father.[8]

The case is remanded for further proceedings consistent with this opinion.

JACOBS, HOFFMAN, and CERCONE, JJ., concur in the result.

---

[8] For a contrasting example, where the basis of decision was exposed, *see Commonwealth ex rel. Lucas v. Kreischer*, 450 Pa. 352, 299 A. 2d 243 (1973), reversing an order granting custody to the father. The mother, a white woman, had remarried with a black man. The hearing judge had found that both would be fit parents but granted custody to the father to protect the children from being the victims of the "almost universal prejudice and intolerance of interracial marriage."

WRIGHT, P. J., and WATKINS, J., would affirm on the opinion of the court below.

SPAULDING, J., did not participate in the consideration or decision of this case.