## Davidyan *v.* Davidyan, Appellant.

600

Argued September 16, 1974. Before Watkins, P. J., Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

*Nathan L. Posner,* with him *Howard R. Flaxman,* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Arthur R. Littleton,* for appellee.

OPINION BY PRICE, J., October 17, 1974:

Frances Gay Davidyan, appellee, on July 5, 1973, filed a petition for a writ of habeas corpus seeking custody of her seven year old son, Nicholas Gail Christie Davidyan.[1] The court below, in a conditional order, granted custody to the mother. The father appealed that order to this court, *Davidyan v. Davidyan,* 229 Pa. Superior Ct. 495, 327 A. 2d 139 (1974), and this court quashed the appeal and remanded the case to the lower court for a determination pertaining to the conditional provisions of the lower court order. On August 21, 1974, the lower court, acting on Petition of the appellee, and without hearing, amended its order and the father again has appealed.

Since the basic fact situation and previous order are detailed in our previous opinion, they need not be repeated here. The present order is as follows:

"AND NOW, this 21st day of August, 1974, this Court having heretofore decided this child custody case by order dated July 25, 1973, following which the Respondent appealed to the Superior Court, which Court granted a supersedeas; and the Superior Court having now handed down an opinion and order quashing that appeal and remanding the case to this Court 'for its

---

[1] Nicholas, the only child of the parties, was born in Philadelphia on March 8, 1966, and is now eight years of age.

own determination in light of the circumstances'; and this Court having now reviewed this opinion as well as the Dissenting Opinion, the Petition of the Relatrix seeking an amendment of the Order of July 25, 1973, and the contents of the Supplemental Record of the Relatrix in the Superior Court (Appellee therein); this Court now states that it is satisfied that the Opinions of Scottish counsel supported by the citations of numerous case authorities constitute sufficiently substantial compliance with the second condition to the Relatrix' reception of custody of the minor subject of this proceeding; the amount of the monetary condition thereto is increased to $5,000.00 and upon the posting thereof the Relatrix shall take custody of Nicholas Gail Christie Davidyan, subject to the rights of visitation in the Respondent as set forth in the July 25, 1973 order; in all other respects the order of July 25, 1973 is republished and confirmed.

BY THE COURT:
s/Robert W. Honeyman
J"

On September 9, 1974, appellee posted a $5,000 bond which was accepted and approved by the lower court, and as is clear from the order of August 21, 1974, the appellee has satisfied the lower court on its condition pertaining to the jurisdictional situation in Scotland. We, therefore, now are faced with an appeal from a final order requiring our review of this award of custody to the mother keeping in mind that the primary consideration is always the permanent welfare and best interest of the child. Act of June 26, 1895, P. L. 316, §2, 48 P.S. §92; *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A. 2d 625 (1972); *Commonwealth ex rel. Graham v. Graham*, 367 Pa. 553, 80 A. 2d 829 (1951); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa. Superior Ct. 229, 312 A. 2d 58 (1973). With this principle in mind, we have examined the record

before us and conclude that the result reached by the lower court is proper. We will, therefore, affirm that decision.

The scope of review of this court in a child custody case is of the broadest type. *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A. 2d 380 (1972). Although we will not nullify the fact-finding function of the hearing judge, we are not bound by deductions or inferences made by the lower court from the facts as found. *Commonwealth ex rel. Bowser v. Bowser,* 224 Pa. Superior Ct. 1, 302 A. 2d 450 (1973); *Commonwealth ex rel. Gifford v. Miller,* 213 Pa. Superior Ct. 269, 248 A. 2d 63 (1968). We need not accept a finding which has no competent evidence to support it, but are instead required to make an independent judgment based on the evidence and testimony, and make such order on the merits of the case as to do right and justice. *Commonwealth ex rel. Morales v. Morales,* 222 Pa. Superior Ct. 373, 294 A. 2d 782 (1972); *Commonwealth ex rel. Johnson v. Pinder,* 217 Pa. Superior Ct. 180, 269 A. 2d 511 (1970).

Appellant's main argument concerns the contention that the lower court, in its decision and subsequent opinion, relied improperly on the tender years presumption. In view of recent appellate decisions, we agree that the lower court overstated the strength of the presumption. The Pennsylvania Supreme Court, in *Commonwealth ex rel. Parikh v. Parikh, supra,* has held the "tender years" doctrine to be merely a vehicle through which a decision respecting a child's custodial well-being may be reached where factual considerations do not otherwise dictate a different result. However, it is abundantly clear that the lower court reached, independently of the tender years doctrine, its conclusion when Judge HONEYMAN in his opinion stated: "From proofs submitted at that hearing (July 24, 1973), the Court was satisfied that the child's educa-

tional, spiritual and physical needs would be amply met by petitioner. (appellee-mother)"

The overstatement of the tender years doctrine does not, therefore, prejudice the validity or basis of the lower court's decision, and further our own independent review of this record leads us to conclude that these proceedings were not prejudicial to appellant and that the result is justified by the record.

Further, we are convinced by the record that this case truly brings into it the tender years doctrine in its more recent appellate application, for the record demonstrates a choice between exceptionally fine parents. They are obviously motivated by a bona fide interest and love of the son involved. Each has the ability, both natural and financial, to provide the best things of life for their son. It is a tragedy that their paths have separated and that they have concluded that they no longer can jointly bestow these talents and resources upon their son. Under such circumstances as are here presented to us and which we cannot change, the tender years doctrine could be the deciding factor in awarding custody to the mother.

Appellee's intention of taking the boy to Scotland does not necessitate a reversal of the decision below. The fact that the child will be removed to a place outside the Commonwealth is not controlling. *Commonwealth ex rel. Parikh v. Parikh*, 219 Pa. Superior Ct. 240, 280 A. 2d 621 (1971), *rev'd on other grounds*, 449 Pa. 105, 296 A. 2d 625 (1972); *Commonwealth ex rel. Ackerman v. Ackerman*, 204 Pa. Superior Ct. 403, 205 A. 2d 49 (1964); *Commonwealth ex rel. Buckner v. Barr*, 173 Pa. Superior Ct. 124, 95 A. 2d 355 (1953). See also *Augustine v. Augustine*, 228 Pa. Superior Ct. 312, 316 at n.1, 324 A. 2d 477, 478 at n.1 (1974). "The paramount consideration . . . is at all times the best interests and welfare of the child, which includes its physical, intellectual, moral and spiritual well-being,

and all other considerations are subordinate." *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. at 444, 292 A. 2d at 383. The child will be afforded every opportunity for constructive, beneficial growth and development in Scotland.

As Judge SPAETH observed in his dissenting opinion in *Davidyan v. Davidyan, supra* at 505-507:

"The fact that appellee intends to take the child to live in Scotland does not compel a different result. In any child custody case in which geography is a consideration with regard to the ability of one parent to see the child, the fact that the child may be removed from the Commonwealth is a factor, but it is by no means the controlling factor. (Citations omitted.) The purpose of the general proposition that the court will hesitate to place a child outside its jurisdiction is to insure that a normal relationship with both parents will be maintained. Commonwealth ex rel. Buell v. Buell, 186 Pa. Superior Ct. 468, 142 A. 2d 338 (1958); Commonwealth ex rel. Hubbell v. Hubbell, 176 Pa. Superior Ct. 186, 107 A. 2d 388 (1954); Commonwealth ex rel. Balla v. Wreski, 165 Pa. Superior Ct. 6, 67 A. 2d 595 (1949). In certain cases custody has been granted to a parent living as far away as the State of Washington, Commonwealth ex rel. Buckner v. Barr, supra, Venezuela, Commonwealth ex rel. Skurat v. Gearhart, 178 Pa. Superior Ct. 245, 115 A. 2d 395 (1955), and Spain, Commonwealth ex rel. Shoemaker v. Shoemaker, 211 Pa. Superior Ct. 188, 235 A. 2d 455 (1967).

"Scotland is neither an uncivilized nor remote area of the world. It is the home of appellee and her family, and the child has lived there. The order of the court below provides that travel expenses for the child to visit appellant are to be borne equally by the parties. Although one may agree with appellant that the normal father-son relationship will probably be weaker if the child lives in Scotland than it would be if appellant

were granted custody, the same may be said of the normal mother-son relationship if the child were to live here. To condition appellee's custody on her remaining here, as appellant suggests, would be to use the child to force appellee into a situation unreasonable as to her and of no advantage to the child. There is no evidence that appellee is attempting to alienate the child's affections for appellant. No doubt the arrangement provided by the order of the court below is not satisfactory to him, but it recognizes his interests and places no financial hardship on him. Custody orders seldom are satisfactory to both parties."

Appellant further contends that the lower court erroneously refused to hear testimony regarding appellee's spending habits and details of a trip taken by appellee, by herself, to Europe. Neither of these relates in any way to the best interests and welfare of the child.

Both parties like to travel. While the father is away, the child had been well cared for by the mother prior to the separation, and since by the regular family housekeeper, who has lived in the home for some years. During the mother's five-week trip on her own, the same woman cared for the child. We fail to see how this is in any way indicative of unfitness or disregard of the child.

This record supports a finding of liberal spending habits by both parties. Based on this record again, we fail to see the relevancy of evidence and definition of "extravagance" as applied to the parties.

Appellant further asserts that the passage of time from July, 1973, to date requires that a new hearing be held so that the lower court may assess possible changed conditions that may have arisen. To recognize this argument would be to defeat finality in any litigation involving the family relationship. And, indeed, the lower court has provided, in its original order of July

25, 1973, that it: "... will entertain a petition for modification of this order hereafter *only* based upon specific allegations of substantial change or changes of circumstances."

The Supersedeas order of September 9, 1974, is dissolved, and the order of the court below is affirmed.

CERCONE, J., concurs in the result.

———

DISSENTING OPINION BY HOFFMAN, J.:

I dissent and would remand the case to the trial court for the taking of additional testimony.

In awarding custody to the mother after the original hearing in July, 1973, the lower court placed great reliance on the "tender years" presumption. Our Supreme Court has held that "[the] 'tender years' [presumption] is merely the vehicle through which a decision respecting the infant's custodial well-being may be reached where factual considerations do not otherwise dictate a different result." *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 109, 296 A. 2d 625 (1972). The Majority Opinion concedes that the extent to which the lower court relied on the presumption was improper, but argues that the record presented sufficient evidence independent of the presumption to warrant the award of custody to the mother. The Majority believes that the trial judge was correct in finding the parents equally capable and qualified to provide for their child, Nicholas Davidyan. Part of the "ample" evidence relied on by the trial judge, however, included the presumption in favor of the mother. The Court can only guess how the trial judge would have resolved the custody issue if he had not placed the weight of the presumption in his balance of competing interests.

The Court gives little weight to appellee's intention of returning to Scotland with the child. As authority, the Majority cites *Commonwealth ex rel. Parikh v.*

*Parikh,* supra, and *Augustine v. Augustine,* 228 Pa. Superior Ct. 312, 324 A. 2d 477 (1974) (Opinion by HOFFMAN, J.). A footnote in *Augustine* [1] expresses my concern over the parochialism inherent in a policy that would favor Pennsylvania residents over nonresidents. That concern, however, is addressed to residence in one of our sister states. The problems for a child faced with expatriation—moving to Scotland to reside with a Scottish mother and her Scottish parents clearly amounts to expatriation—merit careful consideration. Both the lower court and the Majority of this Court treat the issue superficially. The Majority cites *Parikh* as controlling. A close reading of *Parikh,* however, leads me to conclude that the dissenting opinion of Justice EAGEN is an accurate interpretation of the decision: ". . . it is quite evident to me the only basis for the majority decision is the reluctance to permit the child's departure from the United States and the resulting hardship on the father incident to seeing and visiting the child." 449 Pa. at 111, 296 A. 2d at 629. Therefore, the lower court should reconsider its order, recognizing that expatriation is a relevant factor in a custody decision.

A second consideration compels this dissent. Over a year has passed since the original hearing and the lower court's conditional order of July 25, 1973. A young child undergoes significant changes during a

---

[1] Footnote one at 316 states in part ". . . While the policy to favor the Pennsylvania resident over the nonresident, all things being equal, has been expressed in recent decisions, all silently determined as recently as 1972, see *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A. 2d 625 (1972), it is difficult for this Court to recognize the logic or fairness of such a doctrine. It is, after all, presumptuous of this Commonwealth and in derogation of the equal stature of 'sister states' to declare such a proposition. *We should be ever mindful of the child's interests in these cases.* . . ." (Emphasis added.)

one year period. Nicholas has been enrolled in an excellent preparatory school in the Philadelphia area; he has had time to digest the fact of his parents' separation; he may well have successfully acclimated to a way of life. These facts compel that a new hearing be held before the court's order is finalized. The interest in ending litigation cannot outweigh the permanent welfare and best interests of the child. See Act of June 26, 1895, P. L. 316, §2, 48 P.S. §92; *Commonwealth ex rel. Cummings v. Nearhoof*, 141 Pa. Superior Ct. 581, 15 A. 2d 529 (1940); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa. Superior Ct. 229, 312 A. 2d 58 (1973). In addition, Nicholas, almost nine years old, is an alert, intelligent child. He has travelled extensively in Europe, attended school in Scotland, Paris and Philadelphia. He may well have sufficient experience to know where he wants to grow up and what it would mean to expatriate. Because the Court believes that both parents are equally qualified to care for him, his desires and opinion should be elicited by the lower court. Although his opinion is obviously not binding on the lower court, this child is not so young as to forfeit the rights and dignity of other litigants who appear before our courts.

In another context, Mr. Justice DOUGLAS has stated that "[w]here the child is mature enough to express potentially conflicting desires, it would be an invasion of the child's rights to permit such an imposition without canvassing his views." *Wisconsin v. Yoder*, 406 U.S. 205, 242, 92 S. Ct. 1526, 1546 (1972) (DOUGLAS, J., dissenting in part).

Because of the magnitude of the decision concerning Nicholas Davidyan's future well-being, I cannot join the Majority which upholds the lower court order that is based on a stale, incomplete record.