367 A.2d 299
**Donna Lynne MILLIGAN, Appellant,**
v.
**Frank E. DAVISON and Vivian Davison,
his wife.**

Superior Court of Pennsylvania.

Submitted April 12, 1976.

Decided Nov. 22, 1976.

Robert M. Brenner, Timothy Hennessy, Washington, for appellant.

John Solomon, Washington, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

On June 13, 1974, appellant Donna Lynne Milligan filed a petition for a writ of habeas corpus to recover

custody of her son Bryan from appellees Frank E. Davison and his wife, Vivian. Hearings were held on the petition on July 12 and August 20, 1974. On August 20, 1974, the trial court dismissed the petition and that order was affirmed by the court en banc on August 1, 1975.

The testimony at the hearings established that the appellees became involved with Bryan in August or September, 1973, when appellant was injured in a motorcyle accident. Unable to care properly for Bryan, appellant asked the appellees to take Bryan into their home.[1] Appellant expected this arrangment to last for one weekend, but when she returned to the appellees' home, she agreed to allow them to retain custody of Bryan as long as she, appellant, would be permitted to visit Bryan when she desired. On one occasion, the appellees refused to allow the mother to see her son, and it was that action that precipitated the present dispute.

■■■ The fact-finding function, of course, is for the lower court. However, our scope of review in custody matters is very broad, *Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974); *Commonwealth ex rel. Bowser v. Bowser*, 224 Pa.Super. 1, 302 A.2d 450 (1973), and we must be able to conclude that the findings of the lower court are supported by competent evidence. *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976). The polestar in a custody proceeding is the best interests of the child. *Davidyan v. Davidyan*, 230 Pa.Super. 599, 327 A.2d 145 (1974). In order to determine whether the best interests of the child have been served, we *must* have a complete record. *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976); *Augustine v. Augustine*, 228 Pa.Super. 312,

1. The relationship between Bryan and the appellees was never conclusively established. The appellees are the aunt and uncle of Duane Rawls, who admitted to fathering Bryan. However, George Hughes also admitted being the father. Appellant was uncertain, but suspected that Duane Rawls was not the father of her son.

324 A.2d 477 (1974); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973).

At the time of the hearings in this case, appellant was seventeen years old, unmarried, and the mother of three children. Although, at one time, appellant had been receiving social security, it appears that at the time of the hearing, her sole source of income consisted of welfare payments.

Appellant's first son, born when appellant was fourteen years of age, was placed for adoption by the County Child Welfare Agency. A daughter, Erica, two and one-half years old at the time of the hearings, had always resided with her mother. Bryan was one and one-half years old. Appellant testified that she never declined an opportunity to visit Bryan when he was away from her.

Kenneth Karnash, a social worker employed by the Pennsylvania Department of Public Welfare, testified that in March, 1974, appellant became one of his clients. He visited appellant at her apartment on several occasions to evaluate appellant's ability to care for Bryan. Karnash testified that the apartment was immaculate whenever he visited. Both appellant and her daughter were clean and well fed. There were displays of obvious affection between mother and daughter. In the opinion of Mr. Karnash, appellant was quite capable of caring for Bryan.

In contrast, the appellees produced no evidence of their own child-rearing capabilities. There was no evidence introduced of the relationship between Bryan and the appellees. There was no evidence of Bryan's development with the appellees as compared with his development while he was with appellant. There was no evidence of the appellees' fiscal responsibility.

The reason for this dearth of evidence is made clear by the trial court's opinion filed pursuant to former Rule 46

of the Rules of the Superior Court of Pennsylvania.[2]
The court was concerned that the appellees would incur
the expense of an attorney while appellant's legal serv-
ices were supplied by the government. The court there-
fore held that appellant had "not made out a claim for
relief . . .," and dismissed the petition without evi-
dence of the appellees' capabilities.

The proceedings in the trial court and the briefs filed
with this court demonstrate conclusively that appellees
are and have been represented ably by private counsel.
Therefore, the logic of the trial court's action is, at the
least, questionable. However, it is clear that the reason
appellees did not introduce evidence is because the trial
judge determined that they need not do so.

■■ In his opinion, the trial judge supplies us with
many relevant facts. Appellee Frank Davison is a stead-
ily employed postman living in Waynesburg, Pennsylvan-
ia. He is a typical representative of middle America.
His family is respectable. Appellant, on the other hand,
has no useful training or skills, is immature, and has
been "badly confused by the values of the countercul-
ture." However, these findings are not supported by
any evidence of record. Further, they are not facts of
which a court may ordinarily take judicial notice.
Therefore, they cannot enter into the decision of this
case.[3]

■ The court en banc approved the trial court's deci-
sion, noting that appellant admitted the qualifications of

2. Rule 46 was abrogated effective July 7, 1976, by Pa.R.A.P. 5102.
Lower courts are now required to file opinions pursuant to Pa.R.
A.P. 1925.

3. The lower court also justifies its decision on the grounds of
"racial tensions". Appellant is white. George Hughes, Duane
Rawls, and appellees are black. The trial court decided that un-
der the standards of the community, Bryan's welfare would be
enhanced by his living with a black family. However, "problems
related to racial identity [are] inapplicable in custody proceed-
ings. . . ." *Commonwealth ex rel. Myers v. Myers,* 468 Pa.
134, 143, 360 A.2d 587, 591 (1976).

appellees when she placed the child with the appellees in the first place. However, we reiterate that summary conclusions are inappropriate when the custody of a child is the concern. *Gunter v. Gunter, supra.*

From examining the evidence that is properly before us, we can conclude only that appellant is a fit and capable mother. The record establishes nothing about Bryan or the appellees. Thus, it is impossible to determine from this record where the best interests of Bryan lie.

We recognize that depriving a parent of her child is one of the most serious interferences that the state can impose on an individual. We also recognize that in a dispute over custody between a natural parent and one other than a parent, those seeking to deprive the parent of custody face an enormous burden. *See In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (filed September 27, 1976), and cases cited therein.

■■ In this case, however, we would be shirking our responsibilities were we to attempt to decide the best interests of Bryan from a barren record. This court has frequently indicated that where the record is incomplete, remand is necessary. *Gunter v. Gunter, supra; Augustine v. Augustine, supra; Commonwealth ex rel. Grillo v. Shuster, supra; Commonwealth ex rel. Ashfield v. Cortes,* 210 Pa.Super. 515, 234 A.2d 47 (1967).

Therefore, the order of the lower court is vacated and the case is remanded for proceedings consistent with this opinion.

JACOBS, J., joins in this opinion as well as the concurring opinion below.

HOFFMAN, J., concurs in the result of this opinion as well as that of the concurring opinion below.

SPAETH, J., files a concurring opinion in which JACOBS, J., joins and in which HOFFMAN, J., concurs in the result.

SPAETH, Judge (concurring):

I agree that the case must be remanded. In remanding, however, I should require two procedures to be followed.

—1—

The hearing judge imposed the burden of proof on appellant. The majority correctly notes that that was error: the burden is on the party seeking to deprive a mother of custody of her child; and it is an "enormous burden." In addition, however, there is another procedural point that we should in my opinion insist upon.

I agree with the majority that in a custody proceeding the question is likely to arise as to where the child's best interests lie. (I say "likely to arise" because much will depend on the sort of custody proceeding, and who the parties are. *Compare* with each other such recent decisions as *In re: John and James LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976); *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976); *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974).) The best interests test, however, is a comparative test. The occasion to apply it, therefore, never arises until there is some reason to compare the mother of the child with the person who refuses to return the child; and there is no such reason unless the mother has in some respect failed to provide proper care for the child.

It follows that at the hearing on remand, the following procedure should be followed. First, appellees must prove that in some respect appellant has failed to provide proper care for the child. If they fail in such proof, that should be the end of the matter: the case would be no different than if, suppose, a mother were to send her child to summer camp, and at the end of the camp season one of the counselors refused to return the child simply

because he had grown fond of it. Second, if appellees are able to prove that in some respect appellant has failed to provide proper care for her child, then, and only then, should the hearing judge determine whether the best interests of the child require an order that appellant and her child be separated.

—2—

One reason the hearing judge erroneously imposed the burden of proof on appellant is that she is poor and is represented by Legal Aid. Extraordinary as this statement may seem, the judge leaves one in no doubt about its accuracy. Thus in his opinion he says:

Another equity enters here. The prosecutrix is indigent; in fact she is on welfare. The respondents are not. I know he is a postman in Waynesburg who lives in Washington. Such a person walks the tight rope between indigency and affluence and is representative of that Middle America that pays the bills, supports the government, and doesn't have much left over at the end of the month. Quarts of ink and buckets of tears have been shed over the plight of the criminal defendant opposed by the whole weight and panoply of the Commonwealth and the scales of justice have been heavily weighted in favor of the criminal defendant because of this seeming imbalance. What then of the plight of the small holder compelled to face the resources, not merely of the Commonwealth of Pennsylvania, but of the United States of America, in its capacity as Free Legal Services? I do not go so far as to say that this imbalance should alter the burden of proof or change the rules of evidence. I do believe, however, when one party to a private thing in action is paying lawyer's fees from his wages (already subject to withholding and wage tax) and the other is calling upon the government in its role as *parens patriae*, we

should be careful not to let the individual party be worn out by the wealth of the government.

Consequently I did not feel that when Miss Milligan was unable to prevail on her own proof, I should subject the Davisons to further protracted hearings at their expense.

Slip opinion of lower court at 5–6.

This statement demonstrates that the hearing judge was unable to render an impartial adjudication in this case. Accordingly, on remand we should require that the case be decided by another judge.

HOFFMAN, J., concurs in the result of this opinion as well as that of the majority opinion.

JACOBS, J., joins in this opinion as well as in the majority opinion.