396 A.2d 788

**Elizabeth MARTINCHECK, Appellant,**

v.

**John MARTINCHECK.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1978.

Decided Jan. 18, 1979.

Marla R. Blum, Greensburg, for appellant.

William D. Boyle, Greensburg, for appellee.

Before PRICE, HESTER and WATKINS, JJ.

PRICE, Judge:

This appeal arises from the order of the court below, in a habeas corpus proceeding, granting custody of two children to their father.[1] For the reasons set forth herein, we reverse that order and remand the case for a new hearing and full opinion in this matter.

The parties to this appeal, married on February 4, 1966, are now divorced. Since the parties' separation in March 1973, the mother has had continuous custody[2] of the children, with the father's visitation rights periodically adjusted, until October 13, 1977, the order herein appealed.

The testimony in this case developed as follows. The father contended that all of the conflict surrounding custody resulted from the mother's numerous and repeated refusals to comply with court orders, and her insistence on moving the children to North Carolina. The father testified that the mother often refused to permit the father to speak with his children on the telephone, and stressed that he was not financially able to visit the children in North Carolina as often as he would have liked. When the mother did return

---

1. At the time of the hearing in the court below, the children, Sara Jean and George Paul, were eleven and three years of age respectively.

2. The mother was originally granted custody by order dated July 11, 1973, by the Westmoreland County Court. On January 5, 1976, another order was entered after appellant and the children had moved to North Carolina, which granted custody to the mother pending a hearing that summer, at which time the children would be visiting their father in Pennsylvania. On November 10, 1976, the father initiated a proceeding in North Carolina, and as a result, temporary custody was again awarded to the mother, subject again to the father's visitation rights.

to the Commonwealth for brief periods, she did not inform the father so that he could take advantage of the opportunity to see his children. The father testified that the mother's refusal to be present for a hearing in the lower court and her move back to North Carolina prior to a scheduled hearing in Westmoreland County forced him to go to North Carolina to attempt to get custody, or at the least, to assert his visitation rights.

It was the father's contention that the mother's household deprived the children morally, religiously and physically. He offered testimony attempting to establish the mother's extra-marital relationships, of which the children were supposedly aware.

The mother, on the other hand, emphasized that the children, while in her custody, were wrongfully removed from North Carolina by the father in the fall of 1975 and taken to Pennsylvania. A subsequent court order reaffirmed her right to the children, and she took them back to North Carolina. Then, in August 1977, the children came to Pennsylvania to visit their father. They were not, however, returned to North Carolina before school reopened, as was anticipated. It was as a result of that incident that a habeas corpus petition was filed.

Based upon four days of hearings comprising a record of 524 pages, the court below issued findings of fact and an order of court on October 13, 1977. Therein, the court concluded that the father's testimony was not credible, that his actions were principally done out of spite, vengeance and ill feeling toward his wife, that the father willfully and intentionally violated the custody orders of the Pennsylvania and North Carolina courts, and that the father was in contempt of court. The court stated: "It is the opinion of this Court that John Martincheck does love his children and is ably providing for their needs except he is wrongfully attempting to destroy the children's love for their mother . . . . The destruction of this love toward either parent is going to seriously affect the emotional stability of that child in its future."

The court emphasized the children's stated desire to live with the father but admitted that: "This Court is uncertain as to the reasons for their desire to live with their father, but there is absolutely no doubt that the children have a strong desire to live with their father." The court speculated that the fact that the mother had recently remarried *may* have contributed to the children's stated preference.

The court incongruously concluded:

"The Court is reluctant to order custody of the children to the father because of the father's contemptuous conduct, his disrespect for the law and his fabrications in his testimony and his unreasonable behavior and attempting to brainwash the children so as to destroy their love of their mother; however, the Court cannot allow his feeling toward the father, John Martincheck, to affect or influence the Court's primary concern in these proceedings. Namely, the best interest of the two children. There is very little doubt in the Court's mind that under the present circumstances it would be in the best interest of the children to remain in the temporary custody of the father."

■ In all custody disputes, it is fundamental that the best interests of the child must prevail. The child's physical, intellectual, moral and spiritual well-being are given primary emphasis and all other considerations are deemed subordinate. *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972); *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 369 A.2d 821 (1977). Although in this case the court below verbalized "best interests of the child, it is certainly difficult to reconcile the few findings which the court made with its ultimately awarding custody to the father. The court made *no* findings with respect to the mother's ability, or lack thereof, to care for her children and to provide for their physical, spiritual, intellectual or moral well-being.

■ In the instant case, the court below has unfortunately not seen fit to follow this court's numerous pronouncements regarding opinions in child custody cases. " '[T]he

hearing judge should file in every custody case a comprehensive opinion reflecting a thorough analysis of the record as a whole and specifying the reasons for the ultimate decision.' " *In re Hernandez,* 249 Pa.Super. 274, 290, 376 A.2d 648, 656 (1977), *quoting Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 237, 312 A.2d 58, 63 (1973).

> " 'Under both the statutory and case law, the scope of our review in child custody cases is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it.' " *Commonwealth ex rel. Grillo v. Shuster, supra,* 226 Pa.Super. at 235, 312 A.2d at 62, *quoting Commonwealth ex rel. Gifford v. Miller,* 213 Pa.Super. 269, 273–74, 248 A.2d 63, 66 (1968).

In spite of our broad scope of review, the findings of the court below are so sparse and its conclusion so incongruous, that we are convinced that the order must be reversed, and the case remanded.

Provided as we are with such inadequate findings of fact, we are constrained to conclude that the only reason the court below had for vesting custody in the father was the children's stated preference, and the fact that the children had already enrolled for the new school year in Pennsylvania. While it is true that a child's preference can carry great weight in a custody dispute, particularly as he grows older, a mere statement of preference is of little persuasive value. *Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 374 A.2d 1386 (1977). To be of any value the preference must be based on good reasons, and the child's intelligence and maturity must be considered. *Commonwealth ex rel. Holschuh v. Holland-Moritz, supra.* In this case, the court admitted its total lack of understanding for the children's stated preferences, yet appeared to erroneously place great weight upon them.

The court below, in closing, stated that the order was only temporary, and that the following summer another hearing should be held to determine the progress of the existing arrangement. In light of the woefully inadequate findings

made by the court below, and the fact that a year has now passed since custody was temporarily awarded to the father, we order that the case be remanded for a full hearing and submission of a full opinion in compliance with our directive in *In re Hernandez, supra.* We expressly note that nothing in this opinion is to be construed as our expression of preference as between the parties.

The order of the court below is reversed, and the case is remanded for further proceedings consistent with this opinion.