321 Pa. Superior Ct. 36 (1983)
467 A.2d 880
V.B., Appellant
v.
M.L.T.B.
Supreme Court of Pennsylvania.
Argued December 6, 1982.
Filed November 4, 1983.
*37 Robert I. Whitelaw, Philadelphia, for appellant.
Alvin J. Bello, Philadelphia, for appellee.
Before SPAETH, WICKERSHAM and LIPEZ, JJ.
LIPEZ, Judge:
V.B., the father of four-year-old V.D.B., appeals from the trial court's order awarding primary custody of his son to the child's mother and giving him custody only on alternate weekends and six weeknights per month. We find that the record developed by the lower court was inadequate to have enabled it to determine the best interests of the child in this case and we therefore vacate the order and remand for further proceedings.
Appellant and appellee were married on February 26, 1977 and their one child was born on October 31, 1978. When the parties separated on September 10, 1981, appellee and the child moved into her mother's home while appellant remained in the marital residence. The child has lived with *38 his mother and maternal grandmother since that time. Prior to these proceedings, appellant had physical custody of the child, under an agreement between the parties, every Wednesday night and at least part of every weekend, alternating an entire weekend with Saturday night to Sunday night only.
On November 10, 1981, appellant filed a petition for Writ of Habeas Corpus, seeking custody of his son. At the hearing on this petition, appellant testified that he is 27 years old and is employed as a plumber with working hours from 7:00 a.m. to 4:00 or 4:30 p.m. Monday through Friday. He stated that if he had custody of the child, the child would stay with his paternal grandmother during the week at the grandmother's home, where he would have his own bedroom. Appellant would be with him there in the evenings and would be able to stop to see him during the day since the shop where he works is only a few blocks away. On weekends, the child would stay at the marital residence with appellant. Appellant expressed a great deal of love and concern for the child and indicated that he wishes to have a more active role in the child's upbringing. He also stated that appellee has a very good relationship with their son. His only disagreement with her care of the child was in the matter of discipline. He felt that both appellee and her mother are too lax with the child and that they deal with behavior problems by distracting or bribing him. Appellant testified that he would be stricter and would discipline the child when it was called for. Appellant's only objection to the maternal grandmother's home, where the child now lives, was that the child has no bedroom of his own and must sleep with his mother. He said, however, that he believed the child would eventually have his own room when one of the spare bedrooms has been cleaned out. Appellant also testified emphatically that he does not want to take the child away from his mother, that he knows the child loves and needs both parents, and that he would allow liberal visitation if he were awarded custody.
*39 Appellant's evidence also included the testimony of three witnesses: a child psychologist, a neighbor, and appellant's mother. Dr. Merrill David Paletz, a clinical psychologist specializing in children and families, testified that he had observed appellant and the child during a two-hour scheduled visit to the marital residence. He stated that he had observed a very close relationship between appellant and his son and that appellant had participated with the child in play activities as well as getting him his meals and disciplining him when necessary. He also testified that the child appeared to be functioning normally for his age. He stated that, in his opinion, appellant is a "very adequate parent in terms of all aspects of child rearing" and is capable of handling either sole custody of the child or a shared custody arrangement. He also gave his opinion that a shared custody situation in which the child spent a week with each parent in alternation would be a good arrangement for the child while alternate weekends and one night a week with appellant would not provide the child with sufficient contact with his father. The psychologist had not met or observed appellee, however, nor had he met either of the child's grandmothers or visited their homes.
Carmen Carangi, a neighbor of the marital residence, testified that he is a friend of both parties and that both are very good parents. He stated, however, that he felt that the child's mother is reluctant to correct the child when it is needed.
Appellant's mother testified that she was 55 years old and a housewife. She stated that she would be willing and available to take care of her grandson all day on weekdays if custody were awarded to her son, and that she felt that she was able to care for him adequately. She also testified that she thought that both parties were good parents and that the child loved them both.
The only evidence presented by the appellee was the testimony of appellee herself. She stated that she lives with her mother and son in her mother's four-bedroom home. She is employed as a computer processor and works *40 from 9:00 a.m. to 5:00 p.m. on Tuesdays, Wednesdays and Thursdays. She is at home with her son on Mondays and Fridays. Her mother, who is 60 years old, cares for the child on appellee's work days and works two or three days a week on the days that appellee is at home. Appellee stated that her son does not have his own room, but that she is in the process of getting furniture so that he will eventually have a bedroom to himself. She expressed love and concern for the child, acknowledged that he loves and needs his father, and stated that appellant has been a good father. She stated, however, that she felt that the custody arrangement that she and appellant had previously agreed on was unfair because appellant had the child every weekend. She felt that since she works during the week, she should also have the opportunity to spend some entire weekends with her son. She testified that she felt she should have primary custody because she had always assumed the main role in caring for the child, but that she would be willing to let appellant have custody on alternate weekends and one or two evenings a week.
Based on this record, the trial judge entered his order awarding primary custody to appellee and shared custody[1] on alternate weekends and six evenings a month *41 to the appellant. We think it clear that appellee's evidence, which consisted only of her testimony and covered fewer than 25 pages of the 134-page hearing transcript, was inadequate to enable him to compare the living situations offered by the two parties and to accurately determine the best interests of the child.
It is settled that the paramount concern in a child custody proceeding is to determine the best interests of the child. Commonwealth ex rel. Parikh v. Parikh, 449 Pa. 105, 296 A.2d 625 (1972); Sipe v. Shaffer, 263 Pa.Super.Ct. 27, 396 A.2d 1359 (1979). In a contest between parents, each party bears the burden of proving that an award to that party would be in the best interests of the child. In re Custody of Hernandez, 249 Pa.Super.Ct. 274, 376 A.2d 648 (1977). The award must be based on the facts of record and not on mere presumptions; in particular, the tender years presumption is no longer recognized, Sipe v. Shaffer, supra; McGowan v. McGowan, 248 Pa.Super.Ct. 41, 374 A.2d 1306 (1977).
In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record[[2]] Scarlett v. Scarlett, 257 Pa.Super.Ct. 468, 390 A.2d 1331 (1978); In re Custody of Myers, 242 Pa.Super.Ct. 225, 363 A.2d 1242 (1976). . . . In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and *42 developed. See Sipe v. Shaffer, supra; Gunter v. Gunter, 240 Pa.Super.Ct. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. See Commonwealth ex rel. Cox v. Cox, 255 Pa.Super.Ct. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. See Valentino v. Valentino, 259 Pa.Super.Ct. 395, 393 A.2d 885 (1978); Gunter v. Gunter, supra. Only with the benefit of a full record and a full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. Valentino v. Valentino, supra. Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. See Valentino v. Valentino, supra; Commonwealth ex rel. Forrester v. Forrester, 258 Pa.Super.Ct. 397, 392 A.2d 852 (1978); Commonwealth ex rel. Cox v. Cox, supra.

Lewis v. Lewis, 267 Pa.Super.Ct. 235, 240-41, 406 A.2d 781, 783-84 (1979). See also, J.F.G. v. K.A.G., 278 Pa.Super.Ct. 25, 419 A.2d 1337 (1980).
This record is incomplete in several ways. It lacks the crucial testimony of appellee's mother, with whom the child would live and who would assume the care of the child a good deal of the time if custody were awarded to appellee. Without this testimony, the court was unable to assess properly her attitude toward the child and her willingness and ability to share in his care. J.F.G. v. K.A.G., supra, 278 Pa.Superior Ct. at 29, 419 A.2d at 1339, citing Summers v. Summers, 273 Pa.Super.Ct. 285, 294, 417 A.2d 651, 655-56 (1979); Commonwealth ex rel. Schwarz v. Schwarz, 252 Pa.Super. 95, 380 A.2d 1299 (1977). Also lacking was testimony by disinterested witnesses, social workers or investigators as to the child's relationship with his mother, his relationship with his maternal grandmother or either of his paternal grandparents, his living conditions at the home *43 shared by his mother and maternal grandmother and his living conditions at the home of his paternal grandparents, where he would spend his weekdays and at least some nights if custody were awarded to his father. In the face of these omissions, we are unable to accept the lower court's conclusions as to where the child's interests lie.[3] We will therefore vacate its order and remand for further proceedings.[4]
In light of the delays which have already occurred in the disposition of this appeal and the fact that there is no prior custody order which will go into effect when we vacate this order, the lower court is directed to conduct the necessary hearings and to make disposition of this case on remand as expeditiously as possible.
Order vacated; case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.
NOTES
[1] Neither the order nor the opinion of the lower court makes it clear whether the father's rights were to be to shared physical custody only or to both shared physical custody and shared legal custody. See 23 P.S. § 1003. (defining terms) If, after further proceedings, shared custody continues to appear appropriate, see In re Wesley J.K., 299 Pa.Super.Ct. 504, 445 A.2d 1243 (1982) (delineating four factors which, if present, militate in favor of ordering shared custody), the court should specify which type of shared custody is being awarded.

We also note our agreement with the lower court's statement that shared custody does not necessarily mean equal time. The definition of shared custody in the Custody and Grandparents Visitation Act, Act of Nov. 5, 1981, P.L. 322, No. 115, 23 P.S. §§ 1001 ff, is, "[a]n order awarding shared legal or shared physical custody or both of a child in such a way as to assure the child . . . of frequent and continuing contact, including physical access, to both parents." 23 P.S. § 1003 [emphasis supplied]. It is clear that frequent and continuing contact may be assured by many custody arrangements other than that which gives each parent an equal number of days or hours with the child. As in any custody case, however, the hearing judge must support his order with a comprehensive opinion which contains a specific analysis of the testimony and the law and specific reasons for his ultimate decision. Commonwealth ex rel. Newcomer v. King, 301 Pa.Super. 239, 245, 447 A.2d 630, 633 (1982). In a shared custody case, this opinion should also include reasons for the specific division of custody ordered by the court.
[2] We recognize that the issue of the proper scope of review to be applied in custody cases is presently before our en banc court in the case of In re Donna Williams, 674 Pittsburgh, 1981, argued May 10, 1983. The record here, however, whether reviewed under an abuse of discretion standard or under a broader standard of review, is insufficient to enable the judge to determine the child's best interests and enter a proper custody order. Thus a different scope of review could not affect the result in this case.
[3] Appellant contends that the lower court supplied information missing from the record by applying the discredited tender years presumption. The record is far from clear on this issue, and, in light of our disposition of this case, we need not decide whether the presumption was in fact employed by the trial court. We do note, however, that reliance on that doctrine in deciding this case on remand would constitute reversible error. J.F.G. v. K.A.G., supra, 278 Pa.Super. at 30, 419 A.2d at 1339-40, citing Sipe v. Shaffer, supra.
[4] In light of the incomplete state of the record, we are, of course, unable to reverse the lower court's order and enter our own, as appellant requests. Moreover, we see no indication in the record that the hearing judge was so biased as to be incapable of rendering an impartial adjudication of this case. The conduct of the hearing judge here is far from demonstrating the type of prejudice shown by the judge in Milligan v. Davison, 244 Pa.Super.Ct. 255, 367 A.2d 299 (1976), which caused a minority of this court to call for assignment of that case to a different judge on remand.