## Commonwealth ex rel. Bailey, Appellant, *v.* Sumner.

Argued June 15, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*M. J. DeSisti,* with him *E. C. O'Connor,* for appellant.

*J. Roy Lilley,* for appellees.

OPINION BY GUNTHER, J., September 16, 1960:

This is an appeal by Carrie Bailey, the mother of Patricia Ann Baptiste, from the order of the court below awarding custody of the minor child to the paternal grandmother and step-grandfather.

The child's father was Herman Baptiste who married appellant. This marriage terminated in divorce on May 4, 1955. Patricia Ann Baptiste was born of that marriage on August 13, 1947. After the divorce, appellant married Lloyd Bailey on December 1, 1956 with whom she is now living with two children of that marriage, one 20 months and the other eight months old.

The controversy over custody of the minor child dates back to May, 1954, when the father filed a petition seeking custody of his minor daughter. The parents of the minor were then separated and it was alleged that the father was deprived of visitation rights by the mother. The court below awarded custody to the mother with vacation custody to the father and specific visitation rights. In August, 1956, while the child was on vacation and in custody of the father, another petition was filed by the father to determine the future custody of the child, alleging that the child had been residing with the father for a few weeks and that the child wished to remain with him and the paternal grandparents, Benton Sumner and Ruth Sumner. At that hearing, the testimony disclosed that the minor child had been taken by the mother on a trip with a man known as William Lloyd Bailey, going up through Canada and back through New England States, staying the first night in New York State at a place called "North Pole," where all three of them occupied the same motel room. At the conclusion of this hearing, the

court below entered an order continuing the previous order with the proviso that the mother was forbidden to take the child out of the Commonwealth of Pennsylvania without approval of court and after notice to her husband, and that she was further directed not to take the child on any trips with any other man when she stays overnight.

On October 25, 1956, another petition was filed on behalf of the father, alleging that the mother had taken a trip to the State of New York with a man and the child, and that the three persons occupied the same motel room. Testimony was taken on November 20, 1956, and on February 20, 1957, the court below awarded custody of the child to the paternal grandparents until the termination of the school year and provided for visitation by the mother. On February 28, 1957, custody of the minor child was awarded to the father with the understanding that the child live at the home of her grandmother until the end of the school year. This custody remained unchanged for almost three years.

On December 24, 1959, Herman Baptiste was killed in an automobile accident. The mother filed a petition on January 4, 1960, seeking custody of the child from the paternal grandparents. This hearing developed the fact that the child lived with the grandparents quite some time. After the father obtained custody in February, 1957, the child lived with her father and grandparents in their home until May, 1959, when the father and his second wife moved to their own home, taking the child with them. The testimony disclosed that the father and the stepmother of the child lived at the home of her grandparents for about a year after the father's remarriage to assist in the child's adjustment to the stepmother. After May, 1959, the child kept a room with some of her clothing in the grandmother's home and visited and stayed there frequently.

At the conclusion of this hearing, the court below awarded custody of Patricia Ann Baptiste to Ruth Sumner and Benton Sumner and provided the mother with the right to take the child on visits from the grandparents at reasonable hours on the first and third weekends of each month, and providing for custody of the child for a two-week period during the summer vacation of 1960. From this order, the present appeal was filed.

In determining the question of custody of a child, the law is well settled that the paramount consideration is the welfare of the child. All other considerations, including the rights of parents, are subordinate to the child's physical, intellectual, moral, spiritual and emotional well being. *Commonwealth ex rel. Willouer v. Willouer*, 192 Pa. Superior Ct. 625, 162 A. 2d 56; *Commonwealth ex rel. Newel v. Mason*, 186 Pa. Superior Ct. 128, 140 A. 2d 365. The evidence in the instant case discloses that the child is happy and contented in her grandmother's home and that she is well oriented, happy and doing well in the school she has been attending near the grandmother's home. All her associations, including church services, are centered around the home of the grandmother. The grandparents provide the child with a good home in all respects and are financially able to care for her.

Appellant testified that if the child were permitted to live with her, she would provide for her care as a mother should. Her husband, however, did not appear in court and there is no evidence of his financial circumstances. Furthermore, since the obligation of support would have to come, of necessity, from his earnings, there is no evidence to show his willingness to assume this burden over and above the support of his family.

The evidence disclosed that for a period of almost three years the mother has not visited her daughter or communicated with her in any way, although she lived only a few miles away. No birthday cards were sent and during this period no token of affection was demonstrated by way of gifts at Christmas time or at any other time. While it is true that the needs of a child of tender years are best served by her mother, the instant case cannot be controlled by such a legal proposition. This child is not of tender years, but, at present, an adolescent child thirteen years of age. The child's preference, as determined by the court below, was that she be allowed to continue her home with her grandparents. This preference, of course, is not controlling, but when considered with all other circumstances of the case, such a preference cannot be ignored.

We agree with the court below that all considerations of the welfare of the child dictate that she should remain with her grandparents. The burden is on the appellant to establish that the order of the court below is erroneous or based on a mistake of law. *Commonwealth ex rel. Heller v. Yellin*, 174 Pa. Superior Ct. 292, 101 A. 2d 452. In this burden, she has failed. We recognize, however, that the child has reached an age in life where the advice of a mother would be most beneficial to her as she grows from childhood to womanhood and some of these problems can be better handled by a mother rather than the grandmother. *Commonwealth ex rel. Horton v. Burke*, 190 Pa. Superior Ct. 392, 154 A. 2d 255. If a mother desires to win back the love of a child she has lost temporarily by her inaction or indifference, we should not stand in the way of such desirable result. However, as recognized by the court below, such an adjustment, if ever made, would take some time. It was with this laudable purpose in mind that the court below provided for the

right of week-end visitation and custody during the period of the summer months. We believe, however, that the right of visitation should be extended to bring about this result, if possible, and to that end the mother should be given the right to have her child visit with her in her home during each week-end, provided the child's spiritual needs are provided for by the mother by regular attendance at church services. Since custody is always a matter for the supervision of the courts, such right to visitation may be amended as the circumstances warrant.

As so modified, the order of the court below is affirmed.

WATKINS, J., dissents.