Scott, Appellant, v. Scott.

Argued November 24, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Lois J. McKee*, for appellant.

*William G. Staton*, submitted a brief for appellee.

OPINION BY CERCONE, J., April 22, 1976:

On January 22, 1972, Virginia Scott and Charles Scott were married. Four months later Virginia left her husband and returned to her parents. A month after the separation, on June 21, 1972, a son was born. Charles visited his wife and son several times, but was then denied access to Virginia's parents' home. Charles then went to the family division counseling office, Court of Common Pleas of Allegheny County, and requested a visitation order. At a conference with the court counselor, the parties orally agreed that Charles could visit the child either Tuesday or Wednesday evening each week. Charles, pursuant to the agreement, visited his son five times during October and November, 1972. Virginia and her parents allege that during these visits Charles was generally unruly and committed various violent acts. Charles denies these allegations. The night before Thanksgiving, 1972, after Charles had visited with his son, he requested permission to take his son to see his parents, who had never seen the child. Over the objection of Virginia's mother he took the child to his parents and then returned the child a short time later. Since that time Charles has not been permitted to see his son. Charles and Virginia were divorced in February, 1973. In November, 1974 Charles secured counsel and filed a petition with the Court of Common Pleas of Allegheny County seeking the establishment of visitation rights with his son. A hearing was held on February 7, 1975, and the following order was entered:

"Father to have Partial Custody away from home of the Mother with child, James Edward Scott, First and Third Saturdays of each month 1:00 P.M. to 7:00 P.M. Father to have no contact with the mother or maternal grandparents. Child to be picked up and left off by paternal grandmother."

Virginia has appealed to this court objecting to the order for several reasons.

First, Virginia contends that the lower court erred in awarding partial custody to appellee since he only requested visitation. In support of this argument appellant cites the case of *Commonwealth ex rel. Rosequist v. Rosequist*, 216 Pa. Superior Ct. 388, 393 (1970) which found the words "visit" and "visitation" to be synonymous and stated: "visit ... means the right of the parent to go to see the child wherever he might be and does not include the right of the parent to take possession of the child." We agree that Charles was awarded *partial* custody rather than visitation, however we do not agree that it was error to do so. The trial judge found that ill will, altercations and arguments arose between Charles and Virginia and her parents. Since the child resides with Virginia and her parents, it is clear that visitation would not be proper. Therefore, the only alternative is to allow Charles to visit his son out of the presence of Virginia and her parents. This alternative is by definition *partial* custody. To deny this type of relief merely because Charles, in his petition, used the term visitation instead of partial custody would cause an unfair result simply on the basis of technicality and semantics. Charles wanted only to see his son. Accordingly, the lower court had full authority to enter this order which is correct and proper under the circumstances of this case.

Virginia next contends that it was error to order that the child be picked up and left off by his paternal grandmother. Virginia in her brief argues: "The Court

has no authority to impose a burden upon a person (if, in fact, there is such a person) not a party to the case. This is a violation of the due process of law in both the State and Federal constitutions." First, appellant implies in this argument that there is no paternal grandmother. This is clearly incorrect. The lower court opinion specifically mentions the paternal grandmother. The fact is therefore clear that a paternal grandmother does exist. It is also very likely that Virginia knew of her existence. Virginia's implication that there is no such paternal grandmother must be therefore viewed as an attempt to mislead this court. An appellate court's task of ascertaining the facts of a particular case is difficult; it is made more difficult when a party misleads the court. Secondly, while Virginia's concern for the paternal grandmother's due process rights is thoughtful, such claim has no application to the instant case. Any violation of due process of law as to the paternal grandmother can only be asserted by the paternal grandmother.

Lastly Virginia contends that Charles should not be permitted to see his son because it would not be in the best interests of the child. In support of this argument Virginia points out various facts about Charles: e.g., he has not supported the child; at age 29 he is a student; and, he has had altercations with Virginia and her parents. Virginia sums up her description of Charles by saying: "The father has not one quality that any child should emulate." While Virginia's criticisms of Charles are numerous and spirited, they do not include anything which would constitute a real and grave threat to the welfare of the child. See *Commonwealth ex rel. Lotz v. Lotz*, 188 Pa. Superior Ct. 241, 244 (1958). Accordingly the lower court was correct in allowing Charles to visit his son.

Affirmed.

CONCURRING OPINION BY SPAETH, J.:

I join the majority opinion, but I believe it may be

helpful to add a comment on our terminology, which has become fuzzy.

The essential features of the lower court's order are two: the visits directed are brief and repetitive ("First and Third Saturdays of each month 1:00 P.M. to 7:00 P.M."); and the mother and her parents are excluded from participating in the visits because otherwise disagreeable arguments, hard on the child, would probably occur. The lower court called this arrangement "partial custody." I would too. Sometimes, however, we have called such an arrangement "limited custody" or "divided custody." *See Commonwealth ex rel. English v. English*, 194 Pa. Superior Ct. 25, 166 A.2d 92 (1960); *Commonwealth ex rel. Heller v. Yellin*, 174 Pa. Superior Ct. 292, 101 A.2d 452 (1953). I suggest that we no longer use these terms, and that we limit use of the term "partial custody" to cases where psychological considerations, as in the present case, or geographical reasons, *e.g.*, *Commonwealth ex rel. Moore v. Moore*, 172 Pa. Superior Ct. 255, 94 A.2d 93 (1953) (child to spend one week per month with father, when the distance between the parties' homes was too great to permit an ordinary visitation order), require that the non-custodial parent see the child out of the presence of the custodial parent. This would leave only three terms: "custody," "partial custody," and "visitation."

The importance of thus limiting and distinguishing among the terms we use is that it may then be made plain that each term carries with it a particular standard.

In deciding who should have "custody," the hearing judge, as we have repeatedly said, should apply as his standard the best interests of the child. *See, e.g., Augustine v. Augustine*, 228 Pa. Superior Ct. 312, 324 A.2d 477 (1974); *Commonwealth ex rel. Bender v. Bender*, 197 Pa. Superior Ct. 397, 178 A.2d 779 (1962). In applying this standard, the judge must carefully examine the fitness of both parties contesting custody, and make

his determination on the basis of a comprehensive record. *Gunter v. Gunter,* 240 Pa. Superior Ct. 382, 361 A.2d 307 (1976); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa. Superior Ct. 229, 312 A.2d 58 (1973). In deciding whether to grant "visitation," the judge may apply a far more permissive standard.[1] While visitation may be denied, that should be done only when visits are shown to be detrimental to the child (for example, as when evidence of improper or dangerous conduct is shown). *Commonwealth ex rel. Heston v. Heston,* 173 Pa. Superior Ct. 260, 98 A.2d 477 (1953); *Leonard v. Leonard,* 173 Pa. Superior Ct. 424, 98 A.2d 638 (1953). An effort should be made to avoid estrangement between parent and child. Thus a child may be compelled to visit a parent even when the child has expressed a wish not to. *Commonwealth ex rel. Lotz v. Lotz,* 188 Pa. Superior Ct. 241, 146 A.2d 362 (1958). In *Commonwealth ex rel. Turner v. Strange,* 179 Pa. Superior Ct. 83, 115 A.2d 885 (1955), we distinguished the standard to be applied in awarding visitation from that to be applied in awarding custody: "Only when the evidence clearly shows that a mother is unfit to associate with her children should she be denied the right to see them .... The appellant does not seek complete custody of the children, nor under the evidence would she be entitled to it. She does seek, and is entitled to, the right to see her children." *Id.* at 86, 115 A.2d at 887.

When "partial custody" is awarded, the standard to be applied should depend upon the sort of partial custody. The more closely partial custody approaches

---

1. In *Commonwealth ex rel. Rosequist v. Rosequist,* 216 Pa. Superior Ct. 388, 392, 268 A.2d 140, 142 (1970), "visitation" is defined as "the right of the parent to go to see the child wherever he might be and ... not ... the right of the parent to take possession of the child." This definition, however, was formulated in order to construe a statute, Act of June 24, 1939, P.L. 872, §733, as amended, 18 P.S. §4733. I find it unnecessarily restrictive and not descriptive of most visitation orders.

custody, the more closely should the standard approach that applied in awarding custody. Such a situation will be presented where the order of partial custody provides that the child is to stay with the non-custodial parent for an extended period, such as a summer vacation. This is especially likely to occur when the parents live far apart. *Cf. Davidyan v. Davidyan*, 229 Pa. Superior Ct. 495, 327 A.2d 139 (1974) (mother, awarded custody, lived in Scotland; child to visit father, who lived in United States). However, the more closely partial custody approaches visitation, as where the child is to be with the non-custodial parent for frequent but short visits, the more closely should the standard approach that applied in awarding visitation.

In the case before us, the partial custody awarded more closely approaches visitation than custody. The hearing judge was therefore correct in considering the factors involved in an award of visitation. Thus she found no "severe mental or moral deficiency on the part of the father which would constitute a real and grave threat to the welfare of the child," Opinion at 118a, and she refused to deny an award simply because the father had not provided support for the child and had not attempted to enforce his visitation rights for two years. Likewise, in its opinion the majority has applied the same standard, observing that "[w]hile Virginia's criticisms of Charles are numerous and spirited, they do not include anything which would constitute a real and grave threat to the welfare of the child." Majority Opinion at p. 68.

For these reasons, I agree with the majority that the lower court's order granting appellee partial custody should be affirmed.

HOFFMAN, J., joins in this opinion.