409 A.2d 74

**Paul L. MILLER, Sr., Appellant,**

v.

**Lorraine N. MILLER.**

Superior Court of Pennsylvania.

Argued March 19, 1979.

Filed Aug. 24, 1979.

Petition for Allowance of Appeal Denied Dec. 10, 1979.

---

**4.** Appellant's present appellate counsel appears to be a logical choice to act as PCHA counsel.

P. Richard Wagner, Harrisburg, for appellant.

John J. Krafsig, Jr., Harrisburg, for appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order denying appellant's petition for reconsideration of a prior order denying him visitation with his son.

Appellant and appellee were married May 13, 1966; the son was born July 27, 1974. The parties separated on December 6, 1974, and were divorced on August 22, 1975 (appellee subsequently remarried). On October 14, 1975, appellant was ordered to pay $32.50 per week to support his son. At the support hearing appellant denied under oath that he was the boy's father. (Appellant made no subsequent efforts to have non-paternity judicially established, and on this appeal neither party disputes his paternity.)

On September 30, 1976, appellant petitioned for visitation. The petition was denied October 13, 1976, because the lower court found that the petition was not brought in good faith. The court based this finding on these facts: appellant's denial of paternity at the support hearing; the fact that appellant had visited his son only twice since the boy's

birth;[1] and the fact that appellant had not complied with the support order.

On February 1, 1977, appellant was adjudicated in contempt of court for failure to pay support. On April 11, 1978, appellant filed his petition asking the lower court to reconsider its order denying visitation. After a hearing the petition was denied, and this appeal followed.

An initial question we must consider stems from the fact that appellant never appealed the lower court's first order denying him visitation. Appellee asserts that appellant is not merely attempting to appeal an order with respect to which the appeal period long ago expired. However, an order granting visitation is temporary in nature. *Commonwealth ex rel. Bailey v. Sumner*, 193 Pa.Super. 79, 163 A.2d 677 (1960). If circumstances change, it is proper to reexamine the order. *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978); *see De Welles v. Dwelle*, 214 Pa.Super. 376, 257 A.2d 594 (1969) (change of circumstances would justify change in prior unappealed order; no such change found, however). Here, the lower court stated that because there were no changed circumstances since the original petition, appellant's petition for reconsideration was an attempt to "revive the right of appeal lost long ago." Lower court opinion at 5. At the same time, however, the lower court recognized that there *were* changed circumstances: appellant had attempted to visit his son, and he had paid up the support arrearages. Thus there was a proper basis for a petition to reconsider, and the lower court properly proceeded to the separate question of whether these changed circumstances presented any reason to alter the first order.

In resolving this question against appellant, the lower court noted that its first order had been based on a finding that the first petition had been brought to harass appellee. This is not quite accurate: the first order was based on a finding of lack of "good faith," which is not necessarily the

---

1. This appears to have been a misstatement, since the parties did not separate until their son was some four months old; undoubtedly the lower court meant twice since the separation.

same as intent to harass. However, deferring to the lower court's interpretation of its first order, we must still inquire whether the evidence supports a finding of an intent to harass such that a father's right to visitation should be overcome. In undertaking this inquiry we bear in mind a number of guidelines:

> A parent is rarely denied the right to visit a legitimate child. Visitation has been limited or denied only where the parent has been shown to suffer from severe mental or moral deficiencies that constituted a grave threat to the child. *Commonwealth ex rel. Lotz v. Lotz*, 188 Pa.Super. 241, 245, 146 A.2d 362, 364 (1958); see *Commonwealth ex rel. Heston v. Heston*, 173 Pa.Super. 260, 98 A.2d 477 (1953); *Leonard v. Leonard*, 173 Pa.Super. 424, 98 A.2d 638 (1953). Visitation has been granted parents *who have ignored their children for a long period of time, Commonwealth ex rel. Turner v. Strange*, 179 Pa.Super. 83, 115 A.2d 885 (1955); *Commonwealth ex rel. Boschert v. Cook*, 122 Pa.Super. 397, 186 A. 229 (1936), *who have failed to support their children, Scott v. Scott*, 240 Pa.Super. 65, 368 A.2d 288 (1976); *Commonwealth ex rel. Lotz v. Lotz, supra*, who have engaged in marital misconduct or who have lived with lovers, *Commonwealth ex rel. Sorace v. Sorace*, 236 Pa.Super. 42, 344 A.2d 553 (1975); *Commonwealth ex rel. McNamee v. Jackson*, 183 Pa.Super. 522, 132 A.2d 396 (1957), and even to parents whose children did not want to see them, *Fernald v. Fernald*, 224 Pa.Super. 93, 302 A.2d 470 (1973); *Commonwealth ex rel. Turner v. Strange, supra. Commonwealth ex rel. Ermel v. Ermel*, 259 Pa.Super. 219, 224, 393 A.2d 796, 798–99, *quoting Commonwealth ex rel. Peterson v. Hayes*, 252 Pa.Super. 487, 381 A.2d 1311 (1977) (emphasis supplied).

Furthermore, in deciding whether visitation would constitute a grave threat to a child, the scope of our review is quite broad. While we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding that has no competent evidence to support it. *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d

58 (1973); *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968). In addition, we are not bound by deductions or inferences made by the lower court from the facts as found. *Scarlett v. Scarlett, supra.*

Here, the lower court relied on *De Welles v. Dwelle, supra,* for authority that visitation is properly denied where the motive of the parent seeking visitation is harassment of the custodial parent. In reviewing the changed circumstances to see if this motive still existed, the lower court discounted the fact that appellant had paid up his arrearages, saying that the payments "resulted more from the threat of an involuntary visit to the county jail than from a sincere desire to have visitation with the child." Lower court opinion at 3. The court acknowledged that appellant had telephoned appellee a number of times in attempts to get permission to visit the boy,[2] but credited appellee's testimony that each time, these calls erupted into anger, with appellant using foul language. Some of the calls were in the middle of the night. The court again stressed the fact that appellant had attempted at the support hearing to disown the son, although at the hearing appellant testified he did so on advice of other counsel, and that he regretted the action.

Of the three facts that the lower court relied on in finding intent to harass, two of them—failure to pay support, and the fact that appellant had see the child but twice in a long time—would not, standing alone, support a denial of visitation. *Commonwealth ex rel. Ermel v. Ermel, supra.* Furthermore, appellant has sought to reverse both deficiencies (though he has not succeeded in seeing the boy; indeed by virtue of the first order denying visitation, he *may not* see the boy). It is true that appellant once evidently committed perjury by denying paternity; however, he now accepts paternity. Thus, all three facts relied on by the lower court in making its initial finding of intent to harass have been

2. Both parties testified that on these occasions appellee told appellant to get in touch with her lawyer. Appellee acknowledged that appellant did attempt to get in touch with the lawyer, and she corroborated appellant's testimony that the lawyer was hard to get in touch with. N.T.17.

altered; yet the lower court still denies appellant visitation. This holding indeed puts a parent in a difficult position: on reading the first order, appellant could justifiably believe that if he reversed, or undid, the three facts cited by the lower court, his right to visitation would be reinstated. By the severity of its interpretation of appellant's actions, however, the lower court has blocked the clearest path by which appellant might regain his right to visitation.

It is clear that the lower court was heavily influenced by one new factor pointing to an intent to harass: appellant's bothering appellee and her new husband with telephone calls at all hours, and his use of abusive language. However, in *Commonwealth ex rel. Peterson v. Hayes, supra,* the father, who was denied visitation by the lower court, had used abusive language to the mother, and had "torn up" a dresser drawer containing her things. This court, in a plurality opinion with two judges concurring in the result, reversed, saying:

> In any case, assuming, as may well be the case, that the father is hostile to the mother and her husband, that is not a sufficient reason to deny the father the right to visit his children. No reason appears why it would not be possible to order that visitation occur outside of the mother's home or presence. *See Gwiszcz Appeal,* [206 Pa.Super. 397, 213 A.2d 155 (1965)] (visitation away from the mother allowed where mother and father frequently argued and father had struck mother several times).

*Id.,* 252 Pa.Super. at 493, 381 A.2d at 1314.

Nothing we say here overrules the proposition that visitation sought *purely* out of a motive to harass the noncustodial parent may properly be denied. Nor do we intend to encroach upon the lower court's fact-finding function. We do hold, however, that a finding of harassment should be made only slowly, and on clear and convincing evidence. Not only is a parent's right to visitation to be "rarely denied." *Commonwealth ex rel. Ermel v. Ermel, supra.* In addition it must be remembered that parents frequently disagree bitterly, and behave badly, when it

comes to deciding which of them should have custody of their child, and when, or whether, the other may visit the child. A parent who feels thwarted, or betrayed, by the other parent is all too likely to resort to abusive conduct. Thus conduct that may look like harassment may nevertheless arise from a genuine concern for, and desire to see, the child. Finally,

> it must be remembered that an order granting visitation is temporary in nature. *Commonwealth ex rel. Bailey v. Sumner,* 193 Pa.Super. 79, 163 A.2d 677 (1960). At any time, if it should appear that the father's behavior was abusive towards the mother in such a way as to create a threat to the child's welfare, visitation could be denied. *Commonwealth ex rel. Peterson v. Hayes, supra,* 252 Pa. Super. at 493, 381 A.2d at 1314.

█ It remains to be asked whether visitation by appellant would constitute a threat to the boy. *Commonwealth ex rel. Ermel v. Ermel, supra.* The lower court did not find any threat,[3] nor could it properly have, since there was no competent evidence to support such a finding. The facts that appellant had once lost his driver's license, N.T. 10; admitted to being "a bit bull-headed" about support payments, N.T. 8; occasionally telephoned appellee from a pool hall or bar, N.T. 15; and lives on an alley behind a store, N.T. 12, could not singly or in combination support such a finding.

The order of the lower court is reversed and the case remanded with instructions to the lower court to enter an order granting appellant the right to visit his son, with leave to the court, however, to impose such conditions, consistent with this opinion, as may be appropriate.

PRICE, J., dissents.

**3.** The lower court instead found that because of appellant's suspect motives, "no benefit to this three year old child can be derived." Lower court opinion at 5. However, existence of benefit to the child is not the proper inquiry in a visitation case. *See, Commonwealth ex rel. Ermel v. Ermel, supra; Commonwealth ex rel. Lotz v. Lotz,* 188 Pa.Super. 241, 146 A.2d 362 (1968).