## Grooms v. Creamer

*Nancy A. Longenbach,* for petitioners.
*William C. Cramer,* for respondent.

EPPINGER, *P.J.,* January 14, 1980—Roger L. Grooms is the father of a child born out of wedlock to Constance C. Creamer. Prior to the time he was incarcerated in the State Correctional Institution at Rockview, the mother permitted the child, Jeffrey L. Creamer, born February 10, 1976, to visit Roger's mother, Beulah V. Grooms and Roger. For a time the father was confined in the Franklin County jail and the grandmother took the child to the jail to visit the father.

Now the mother does not want either the father or

the grandmother to have visitation rights with the child, so this action was filed.

In addition to the visitation privileges the grandmother had with the child, she actually took care of him for a time because on occasion the mother was confined in the Franklin County Prison. So there is no question that there is a strong relationship between the grandmother and the child. She has contributed much to his well-being and it is obvious she loves and cares for him very much.

The mother has some complaints against the father. She stopped living with him, she said, because he beat her. She also states that the child has asthma and that she is afraid that he will be adversely affected by visiting with his grandmother and his father.

We conclude that both the father and the grandmother should be permitted to visit with the child. We have been convinced that it is in the child's best interest that he be permitted visitation with his grandmother: Com.. ex rel. Fetters v. Albright, _____ Pa. Superior Ct. _____, 405 A. 2d 1260 (1979). We believe this is especially fruitful because the only way the child can visit with the father is through the grandparent.

Our only concern about the child's visiting the father is that he is in a prison. That was no deterrent to the mother's visiting the child when she was in prison and none when the father was in the Franklin County jail. However, we are required to consider what is in the child's best interest: Spells v. Spells, 250 Pa. Superior Ct. 168, 378 A. 2d 879 (1977).

There was a time when children were not allowed in prisons. It is not clear whether this administrative policy was adopted for the benefit of children or to minimize visitation problems. The law favors

visitation rights with noncustodial parents because of the strong policy to promote the child's relationship with both parents: Com. ex rel. Sorace v. Sorace, 236 Pa. Superior Ct. 42, 344 A. 2d 553 (1975). Visitation can only be denied where to do so would have a severe adverse impact on the child's welfare, where there is a real and grave threat to the child: Scott v. Scott, 240 Pa. Superior Ct. 65, 368 A. 2d 288 (1976); Sorace, supra.

We conclude that at this time imprisoned parents are not prevented from visiting with their children in prison. It has been held that if an imprisoned parent fails to utilize whatever resources exist to maintain contact with his child, he may forfeit his parental rights: In re Adoption of McCray, 460 Pa. 210, 331 A. 2d 652 (1975). The right of a father, even though confined, to visit with his child was held to be a fundamental right guaranteed by the First and Fourteenth Amendments: Mabra v. Schmidt, 356 F. Supp. 620 (W.D. Wis. 1973).

Whatever the child's problems may be when he returns from a visit with his father, we think his interests are best served by maintaining a relationship with his father. In this respect the mother said that sometimes the child came home from visits with the father and was upset. There was no evidence the father mistreated the boy. See Leonard v. Leonard, 173 Pa. Superior Ct. 424, 98 A. 2d 638 (1953).

There was a prior order in this case. Under that order, dated March 23, 1979, the father was permitted to visit with his son Jeffrey every other Saturday and the grandmother was given the responsibility of transporting the child for the visitation. The general format of that order seems appropriate even today. However, because the father is confined at Rockview, we think it would be appropriate to grant

the grandmother and the father joint visitation privileges every other weekend from Saturday morning at 9:00 until Sunday evening at 6:00, and it will be the grandmother's responsibility to see that the child visits his father on each of these weekends.

## ORDER

January 14, 1980, the prayer of the petition for visitation rights for Roger L. Grooms and Beulah V. Grooms is granted, and Roger L. Grooms and Beulah V. Grooms are granted joint visitation rights with Jeffrey L. Creamer, Roger L. Grooms' son, on Saturday, January 26, 1980 from 9:00 in the morning until Sunday, January 27, 1980 at 6:00 in the evening and every second weekend thereafter. Beulah V. Grooms shall provide all transportation for the exercise of these visitation rights and on each occasion shall provide transportation for the child to visit with Roger L. Grooms at his place of confinement at least once during the weekend.

In addition, Roger L. Grooms and Beulah V. Grooms are granted joint visitation rights to be exercised as above, on holidays, according to a schedule to be developed by the parties. If the parties cannot work out such a schedule, on application, the court will make an appropriate order.

The parties shall each pay their own costs.