J-S16018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| C.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| J.S., | : | |
| | : | |
| Appellee | : | No. 1993 MDA 2018 |

Appeal from the Order Entered November 9, 2018
In the Court of Common Pleas of Berks County Civil Division at No(s):
13-16004

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 09, 2019**

In this custody case, C.S. (Father), appeals from the trial court's November 9, 2018 order addressing shared custody between Father and J.S. (Mother).  The order directs that the parties' daughter, (B.S.), who has an issue with Mother's boyfriend, (C.L.), consistently attend therapy with a named counselor, and that the parties comply with treatment recommendations.  The order further provides that C.L. may not be present in Mother's home during Mother's periods of physical custody under the existing custody order entered on April 2, 2015.  Additionally, the order permits the parties' son, (L.S.), who does not have an issue with C.L., to have contact with C.L. if L.S. desires.  Since C.L. is not permitted to be present in Mother's home during Mother's periods of physical custody, any such contact between C.L. and L.S. would have to occur outside of Mother's home.  After careful review, we affirm.

The trial court recounted the factual and procedural history as follows:

. . . . Suffice it to say that the parties, [Father] and [Mother], are the parents of two minor children, L.S. and B.S.[1] For more than three years, the parties operated under a custody order entered April 2, 2015, providing for shared legal custody, with Mother having primary physical custody and Father having physical custody on alternating weekends with the possibility of longer stretches over summer vacation. On August 24, 2018, during one of his full summer weeks with the children, Father filed a Petition for Special Relief and a Petition to Modify Custody. Father raised concerns of emotional and verbal abuse and general tension in Mother's home, partly to do with the involvement of Mother's boyfriend, [C.L.]; [Father] also indicated the children themselves wished to remain with him. Father did not return B.S. to Mother's custody as scheduled. On an emergency basis in the undersigned's absence, the Honorable James M. Lillis ordered Father to return B.S. to Mother and continue following the April 2, 2015, order. Father instead obtained an Emergency Protection from Abuse Order on behalf of B.S. against Mother and [C.L.]; the subsequent temporary Protection from Abuse Order was entered only against [C.L.]

After discussion with the parties and counsel in September 2018, the undersigned determined it was imperative that B.S. attend counseling. The parties were unable to agree on arrangements, which delayed the start of counseling. As a result, on November 8, 2018, the [c]ourt ordered that B.S. "shall consistently attend therapy" with a named doctor and that the parties were to comply with treatment recommendations. As an incidental matter, the [c]ourt further ordered: "[C.L.] may not be present in the home during Mother's periods of custody. [C.L.] may have contact with L.S. if requested by L.S." As is clear from those terms, the order keeps Mother's boyfriend out of the children's home environment but avoids completely preventing the less-troubled child from

_____

[1] The record indicates that Mother and Father were married in May 2004. B.S. was born in October 2004, and L.S. was born in March 2008 (collectively, Children). Father initiated this action in June 2013, with the filing of a complaint in custody and divorce. The record is unclear as to whether a divorce decree has been entered.

seeing or talking to Mother's boyfriend outside the home *if the child chooses.*

Trial Court Opinion, 12/28/18, at 1-2 (emphasis in original).

On August 24, 2018, Father filed a petition for special relief in custody. ***See*** Petition for Special Relief in Custody, 8/24/18, at 3-6. This petition averred that Mother and C.L. were subjecting B.S. to verbal and physical abuse and requested a temporary custody order awarding Father primary physical custody of B.S. pending a custody conference. ***Id.*** That same day, Father also filed a petition to modify the custody order of April 2, 2015. ***See*** Petition to Modify Custody Order, 8/24/18, at 4. The petition repeated the same allegations and requested primary physical custody of B.S. and L.S. ***Id.*** at 4-6.

On August 27, 2018, the court issued a rule to show cause regarding the petition for special relief in custody, scheduling an evidentiary hearing for September 12, 2018. ***See*** Rule to Show Cause, 8/27/18, at 1. On August 29, 2018, the court ordered Father to immediately return B.S. to Mother's custody and abide by the terms and conditions of the custody order entered April 2, 2015, pending further order of the court. ***See*** Order, 8/29/18, at 1.

On September 7, 2018, Mother filed a petition for contempt, averring that Father failed to return B.S. to Mother on August 26, 2018. ***See*** Petition for Contempt, 9/7/18, at 1-2 (unpaginated).[2] Mother averred that, following

---

[2] Mother's petition for contempt indicates that Mother filed an emergency petition for custody on August 29, 2018, that was heard the same day. ***See***

the court's order directing that B.S. be returned to Mother's custody, Father obtained an emergency protection from abuse order (PFA) against Mother and Mother's boyfriend on August 30, 2018. *Id.* at 3. Father then failed to return B.S. and L.S. to Mother that Monday [September 3, 2018]. *Id.* On September 4, 2018, Father attempted to obtain a temporary PFA on behalf of both children against Mother and C.L. *Id.* at 4. The court issued a PFA order as to C.L. and specified that this order did not affect custody. *Id.* Father failed to return Children that evening, although Children and Youth Services informed Father that Children could be returned home. *Id.* at 5. After the initiation of contempt proceedings, Children were returned to Mother on September 5, 2018. *Id.* As a result, Mother requested that the court find Father in contempt and award attorneys' fees. *Id.*

That same day, the court issued a rule to show cause for an evidentiary hearing regarding Father's petition for special relief. *See* Rule Returnable, 9/7/18, at 1. On September 9, 2018, Mother filed an answer to Father's petition for special relief, denying many of Father's averments. *See* Answer to Plaintiff's Petition for Special Relief, 9/9/18, at 1-5.

---

Petition for Contempt, 9/7/18, at 2 (unpaginated). While the emergency petition is not in the certified record, Mother avers that the court's order of August 29, 2018, compelling Father to return B.S. to Mother, was a result of this petition. *Id.*

On October 22, 2018, Mother filed a petition seeking to re-list the matter.[3]  *See* Petition to Re-List, 10/22/18, at 1-2 (unpaginated).  Mother averred that at the September 13, 2018 hearing on Mother's contempt petition, the court made clear that B.S. should be placed in counseling immediately, but while counsel for both parties discussed counseling, Father fired his attorney.  *Id.*  Mother and Father were unable to agree upon a counseling provider, and no proposed order was submitted.  *Id.*  Mother requested that the court enter an order re-listing the matter to resolve the issue and for counseling to begin as soon as possible.  *Id.*

On October 23, 2018, the court issued a rule returnable scheduling an evidentiary hearing for November 7, 2018.  *See* Rule Returnable, 10/23/18, at 1.  On November 5, 2018, Father filed an answer to the petition to re-list, requesting that the court deny and dismiss Mother's petition to re-list and enter an order for counseling for B.S. to begin immediately with the consent of both parties.  *See* Answer to Petition to Relist, 11/5/18, at 1-3.

It appears that on November 7, 2018, the date of the hearing scheduled on Mother's petition to re-list, no testimony or evidence was taken, and all discussion took place off the record.  The court read the order into the record,

_____

[3] It is unclear what, exactly, Mother was requesting to re-list.  Based upon the wording of the request, it appears Mother was attempting to have her petition for contempt re-listed.  She averred that discussions regarding her petition as well as counseling for B.S. were held in court on September 13, 2018, but Father fired his attorney before an order could be entered.  In Father's answer to the petition to re-list, he cited both his petition for special relief and Mother's petition for contempt.

and Father made a general objection. ***See*** N.T., 11/7/18, at 1-2. A written copy of this order was then entered into the record on November 9, 2018. Father timely filed a notice of appeal and a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for review:

A. Whether the trial court erred and abused its discretion in granting C.L., a third party, partial custody of L.C.S., the minor child, without consideration of the factors set forth in 23 Pa.C.S. § 5328 to determine whether it was in the best interests of the child?

B. Whether the trial court erred and abused its discretion in granting C.L., a third party, partial custody of L.C.S., the minor child, as C.L. has no standing in this matter?

C. Whether the trial court erred and abused its discretion by failing to consider the safety conditions affecting the child when granting partial custody to C.L., who has been indicated for child abuse?

D. Whether the trial court erred and abused its discretion by modifying a custody order without having a petition before it?

E. Whether the trial court erred and abused its discretion by not allowing a full and fair hearing on the record?

Father's Brief at 7-8 (unnecessary capitalization and suggested answers omitted).

Prior to reviewing the merits of Father's issues, we must determine whether we have jurisdiction. ***See In re W.H.***, 25 A.3d 330, 334 (Pa. Super. 2011). Mother contends that Father's appeal should be quashed because it is not taken from a final order, nor is the November 9, 2018 order interlocutory and appealable as of right or permission, or a collateral order, but rather, an

- 6 -

unappealable interlocutory order. ***Id.***; ***see also*** Pa.R.A.P. 311, Pa.R.A.P. 312, Pa.R.A.P. 341; Mother's Brief at 8. Father counters that the order is appealable under the collateral order doctrine because it "addresses [the custody rights of] a third party inserted into the action." Father's Brief at 2-3.

When determining whether a custody order is final and appealable, we look to ***G.B. v. M.M.B.***, 670 A.2d 714 (Pa. Super. 1994) (*en banc*). In that case, an *en banc* panel of this Court held, "a custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." ***G.B.***, 670 A.2d at 720. Here, the trial court had completed its rulings on Father's petition for special relief and petition for modification by resolving them in the November 9, 2018, order following off-record discussions between the parties and counsel at the November 7, 2018, hearing.

The trial court stated:

> After discussion with the parties and counsel in September 2018, the undersigned determined it was imperative that B.S. attend counseling. The parties were unable to agree on arrangements, which delayed the start of counseling. As a result, on November 8, 2018, the [c]ourt ordered that B.S. "shall consistently attend therapy" with a named doctor and that the parties were to comply with treatment recommendations. As an incidental matter, the [c]ourt further ordered: "[C.L.] may not be present in the home during Mother's periods of custody. [C.L.] may have contact with L.S. if requested by L.S." As is clear from those terms, the order keeps Mother's boyfriend out of the children's home environment but avoids completely preventing the less-troubled child from

seeing or talking to Mother's boyfriend outside the home *if the child chooses* . . . . the [c]ourt finds it difficult to elaborate any further on the simple fact that the order on appeal does not award any form of custody.

Trial Court Opinion, 12/28/18, at 2.

Neither the trial court order nor its opinion contemplates any further hearings or rulings on Father's petition for special relief or his petition to modify the existing April 2, 2015 order. In fact, in the November 9, 2018 order, the trial court merely refined Mother's exercise of her physical custody by placing a restriction on C.L.'s presence, based on the allegations in Father's petitions and the parties' discussions regarding how to resolve B.S.'s issue with C.L. through counseling.

Thus, we find that the trial court entered its order within the scope of *G.B.*, after it had decided that no hearing on the special relief and modification petitions was necessary, and that it intended the November 9, 2018 order, which refined the parties' agreed-upon April 2, 2015 custody order, to be a complete resolution of the parties' custody issues. The trial court notes that its order addresses the Children's contact with Mother's boyfriend, and does not award custody. *See* Trial Court Opinion, 12/28/18, at 2-3. The trial court "respectfully recommends that its order be affirmed." *Id.*

Consistent with the foregoing, the trial court intended its order to be a final order, and addressed the merits of Father's issues on appeal. Accordingly, under *G.B.*, we find the order on appeal to be final and appealable, and proceed to address the merits of Father's issues.

"In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following: [enumerating sixteen factors]." **M.O. v. J.T.R.**, 85 A.3d 1058, 1062 (Pa. Super. 2014). The custody statute delineates the different types of custody that may be awarded in the best interests of the child, and the court may modify a custody order to serve the best interest of the child. **Id.**

In **M.O.**, the parties resolved a discrete issue pertaining to vacation custody time and transportation, and whether the father was required to be off from work while the children stayed with him, with limited testimony taken in chambers; the trial court then issued an order without examination of the sixteen statutory factors. **Id.** at 1060. Mother appealed, arguing that the court erred in refusing to expressly consider each of the sixteen factors in making its decision, and in failing to provide rationale for its decision. **Id.** at 1061. On appeal, this Court rejected the mother's argument, noting that the court had made no award of custody, or even changed the amount of custodial time either party had with the children, but addressed a subsidiary issue; accordingly, we found that the court was not bound to address the sixteen statutory factors or its reasons for the award. **Id.** at 1062-63. This Court narrowed the holding of **M.O.** in **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014), finding that **M.O.** was applicable *only* to cases in which custody was not directly modified. **Id.** at 824 n.4.

Instantly, Father characterizes the November 9, 2018, order as a modification of the custody April 2, 2015 order, granting partial physical custody to C.L. *See* Father's Brief at 2-3, 17-19. As we discuss, *infra*, Father's characterization of the order is not accurate, and because Father's issues are intertwined, we address them together.

The trial court explained:

> [The Child Custody Statute] defines legal custody as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions," and physical custody as "[t]he actual physical possession and control of a child." 23 Pa.C.S.A. § 5322. The order in question does not give [C.L.] the right to make any decisions concerning L.S., nor does it give him physical control. It concerns only *contact*, a word that appears nowhere in the custody definitions, and it does not give Mother's boyfriend any *right* to such contact.

Trial Court Opinion, 12/28/18, at 1-2.

Father raises additional arguments in his attempt to assert that the trial court awarded C.L. some form of custody. *See* Father's Brief at 17. He contends that "contact" is the enactment of custody, as it is impossible to have any form of physical custody without contact. *Id.* at 18-19. Father cites *Commonwealth ex rel. Zaffarano v. Genaro*, 455 A.2d 1180 (Pa. 1983), a case in which grandparents sought visitation and temporary custody rights prior to the enactment of our current custody statute, and *M.G. v. L.D.*, 155 A.3d 1083 (Pa. Super. 2017), a case in which an incarcerated mother requested visitation and telephone contact with her daughter and where the maternal grandfather requested partial physical custody of the child. *Id.*

Initially, we note that visitation, as referenced in **Zaffarano**, no longer exists in the current custody statute. **See Zaffarano**, 455 A.2d 1180, 1182 n.5 (Pa. 1983) (citing **Scott v. Scott**, 368 A.2d 288, 291 (Pa. Super. 1976) (Spaeth, J., concurring and noting that Pennsylvania recognizes three possible custodial arrangements, "custody," "partial custody," and "visitation"). The current child custody statute does not provide for visitation, but notes that in **statutory provisions other than** 23 Pa.C.S.A. § 5321, *et seq.*, when the term visitation is used in reference to child custody, the term may be construed to mean partial physical custody, shared physical custody, or supervised physical custody. **See** 23 Pa.C.S.A. § 5322 (emphasis added). In the Child Custody Statute, those terms are defined in the following manner:

> **"Partial physical custody."** The right to assume physical custody of the child for less than a majority of the time.
>
> **"Physical custody."** The actual physical possession and control of a child.
>
> …
>
> **"Shared physical custody."** The right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child.

**Id.** Visitation is not prescribed by the statute. **See** 23 Pa.C.S.A. § 5323. Rather, a person who has standing, *i.e.* a parent, a person who stands *in loco parentis* to the child, or a grandparent of the child under certain conditions, may petition for custody and be awarded various forms of physical custody

including partial and shared physical custody. *See* 23 Pa.C.S.A. § 5324, *see also* 23 Pa.C.S.A. § 5325.

While Father attempts to argue that visitation is "equated and recognized" as a form of physical custody, the case he cites to support his assertion is inapplicable. *See* Father's Brief at 20. In *M.G.*, the biological mother of a child requested visitation while incarcerated in prison. *M.G.*, 155 A.3d at 1093. In a footnote, this Court recognized that the Child Custody Act no longer identifies visitation as a form of custody, and noted that the term is "equated" with partial physical custody. *Id.* at n.10. The panel further observed that Mother used the term in its literal sense: a prison visitation. *Id.* Ultimately, the Court addressed mother's claims based upon standards for prison visits, stating that the trial court is "limited to a determination of the number of visits and perhaps some contacts through telephone calls and written correspondence . . . Prison visit requests involve additional factors unique to that scenario that courts must consider in evaluating the overarching best interests of the child." *Id.* at 1094 (quoting *D.R.C. v. J.A.Z.*, 31 A.3d 677 (Pa. 2011)). In this context, our Court has found that visitation is no longer an available remedy in the Child Custody statute. *See S.T. v. R.W.*, 192 A.3d 1155, 1166 (Pa. Super. 2018). Regardless, the analysis regarding prison visitation is not applicable to this case, as C.L. is not a parent, nor is he incarcerated.

As discussed above, the order entered on November 9, 2018, did not grant C.L. partial physical custody. C.L. is not a party with standing to request

- 12 -

custody, C.L. did not file for custody or a custody modification, and C.L. was not granted custody. The order does not grant C.L. any rights but, instead, limits Mother's custody by providing that C.L. may not be present in the home during Mother's custodial periods, and that L.S. may have contact with C.L. if L.S. wants. **S.T.**, 192 A.3d at 1166; 23 Pa.C.S.A. §§ 5322-5323.

Nor does the November 9, 2018 order modify the existing April 2, 2015 order. Father filed a petition to modify custody in August 2018, but his petition was not granted; instead, the court ordered Father to return B.S. to Mother and to follow the April 2, 2015 custody order. Rather than doing so, Father obtained Protection From Abuse orders on B.S.'s behalf, first against Mother and C.L., and then solely against C.L. When Mother again sought the return of B.S., the parties has discussions in chambers without formal testimony or a hearing. This situation is analogous to **M.O.** in that the court did not modify custody, but clarified discrete, subsidiary issues that arose under the April 2, 2015 custody order: namely, B.S.'s attendance at counseling, C.L.'s status during Mother's periods of custody, and L.S.'s contact with C.L. **See M.O.**, 85 A.3d at 1062-63; **cf. A.V.**, 87 A.3d at 824 n.4. Accordingly, the trial court was neither required to discuss the sixteen custody factors, nor to delineate its reasoning on the record. **Id.**

For these reasons, we find no merit to Father's issues, and affirm the trial court's November 9, 2018 order.[4]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/09/2019

---

[4] In Father's brief and reply brief on appeal, Father requests this Court to order a change in jurisdiction from Berks County, but he has not properly developed this request. Thus, we deny the request without prejudice for Father to raise it in the trial court in future proceedings.